## In re CONSTAR INTERNATIONAL INC. SECURITIES LITIGATION.

**Constar International Inc; Charles F. Casey; William G. Little; Michael J. Hoffman; James C. Cook; Alan W. Rutherford; John W. Conway; Angus F. Smith; Frank J. Mechura; Lazard Freres & Co., LLC.; Citigroup; J.P. Morgan Securities, Inc.; Deutsche Bank Securities, Inc.; Salomon Smith Barney, Inc.; Crown Holdings, Inc., Appellants.**

No. 08–2461.

United States Court of Appeals,
Third Circuit.

Argued July 13, 2009.

Filed: Oct. 29, 2009.

Steven B. Feirson, Esq. [Argued], David W. Brown, Esq., Michael L. Kichline, Esq., Stuart T. Steinberg, Esq., Dechert, Jill M. Baisinger, Esq., Marc J. Sonnenfeld, Esq., Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants–Appellants, Constar International Inc; Charles F. Casey; William G. Little; Michael J. Hoffman; James C. Cook; Alan W. Rutherford; John W. Conway; Angus F. Smith; Frank J. Mechura; Lazard Freres & Co., LLC.; Citigroup; J.P. Morgan Securities, Inc.; Deutsche Bank Securities, Inc. Salomon Smith Barney, Inc.; Crown Holdings, Inc.

Eric A. Isaacson, Esq. [Argued], Joseph D. Daley, Esq., Coughlin, Stoia, Geller, Rudman & Robbins, San Diego, CA, Laura S. Stein, Esq., Philadelphia, PA, for Plaintiffs–Appellees, Ameesh Bhandari; Randolph Redstone.

Before: RENDELL, FUENTES, and ROTH, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

In this securities class action, defendants Constar International, Crown Holdings, Salomon Smith Barney, Citigroup Global Markets, Citigroup, Deutsche Bank Securities, J.P. Morgan Securities, and Lazard Freres & Co. appeal the District Court's Order granting class certification. Defendants argue that the District Court erred by adopting a liberal construction of Rule 23 in favor of class certification, by not conducting a rigorous analysis of the Rule 23 requirements for class certification—especially as to the predominance inquiry—and by failing to consider the opinion of defendants' expert. We disagree, and conclude that the District Court properly granted class certification.

Constar manufactures PET (polyethylene terephthalate) plastic food and beverage containers. Its initial public offering ("IPO") occurred on November 14, 2002, when its parent company and co-defendant, Crown Holdings, sold 10.5 million shares to the public at an offering price of $12.00 per share. Plaintiffs,[1] who purchased registered shares from that offering, claim that this price was inflated because Constar's registration statement contained materially false and misleading statements, and because it omitted required information. Plaintiffs seek relief against Constar under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, which "provides a private right of action to individuals who have suffered harm from misstatements in an issuer's registration statement." *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 273 (3d Cir.2005). They also seek judgment against Constar's underwriters and controlling entities (the remaining defendants named above) under § 15 of the Securities Act, 15 U.S.C. § 77o.

According to plaintiffs, the registration statement misrepresented Constar as a

---

**1.** The District Court defined the class as: "All purchasers of the securities of Constar International, Inc. ('Constar' or 'the Company') issued pursuant to or traceable to the Company's Registration Statement/Prospectus (the 'Registration Statement') for Constar's November 14, 2002 initial public offering ('IPO' or the 'Offering') seeking to pursue remedies under the Securities Act of 1933 (the 'Securities Act')." (Joint App. 27.)

competitive business with a strong future when, in fact, its business was deteriorating and weak. Specifically, they allege that Constar materially misrepresented the company's goodwill, assets, operational strength and capacity, equipment quality, and customer base. Plaintiffs also allege that Constar's parent, Crown Holdings, had transferred a substantial part of Crown's debt to Constar as part of Constar's IPO.

Plaintiffs allege that these misrepresentations became apparent to the market in the summer of 2003. On July 29, 2003, Constar acknowledged in a press release that its second-quarter results were disappointing, and in a conference call the next day attributed these results to the loss of important customers and the absence of an expected technological superiority compared to its competitors. Plaintiffs allege that these disclosures caused Constar's stock to drop thirty percent, from $9.17 per share on July 28, 2003, to $6.00 per share on July 30, 2003. On August 14, 2003, Constar issued a press release reflecting the impairment of its financial goodwill "[d]ue to the trading price of the Company's common stock and other factors." (Joint App. 128.) According to plaintiffs, this was a belated disclosure because the market had already absorbed the information regarding the goodwill impairment and other business problems. However, defendants maintain that the truth about the alleged goodwill misrepresentations did not become apparent to the market until the August 14 press release. Moreover, they claim that the losses after the July disclosures were predicated on lower sales and higher inventory costs due to unseasonable weather conditions, not the factors identified by plaintiffs.

Plaintiffs filed suit on September 5, 2003, by which time Constar's stock was trading at $5.20 per share. The District Court referred plaintiffs' motion for class certification to retired Magistrate Judge Diane Welsh and appointed her as Special Master. The Special Master recommended class certification, and the District Court adopted the Special Master's reasoning and approved her Report. The court certified the class, concluding that "plaintiffs established the elements required by Rules 23(a) and 23(b)(3)." (Joint App. 31.) Defendants filed a timely appeal.

We granted defendants' petition for an interlocutory appeal under Fed.R.Civ.P. 23(f). The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1337. We have jurisdiction under 28 U.S.C. § 1292(e) and Fed.R.Civ.P. 23(f).

Our review of a district court's grant of class certification is for "abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir.2008) (internal quotation marks omitted). We review *de novo* whether an incorrect legal standard has been used. *Id.* Since "each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Id.* at 320. Any matter relevant to Rule 23's prerequisites for class certification, including an expert's opinion, requires a "rigorous analysis," in which a court must " 'assess all of the relevant evidence admitted at the class certification stage.' " *Id.* at 323 (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir.2006)). The mandates "set out in Rule 23 are not mere pleading rules." *Id.* at 316. Unless each requirement is actually met, a class cannot be certified. *Id.* at 320.

Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed.R.Civ.P. 23(a). Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Plaintiffs here sought certification under Rule 23(b)(3), which requires a finding by the District Court "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These requirements are known as predominance and superiority.

▮ Although we afford a district court "broad discretion" in Rule 23 matters, we require that each Rule 23 component be satisfied. *Hydrogen Peroxide*, 552 F.3d at 310 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (Breyer, J., concurring in part and dissenting in part) (stating that Rule 23 decisions implicate "highly fact-based, complex, and difficult matters")). Class certification is an especially serious decision, as it "is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle nonmeritorious claims on the part of defendants)." *Newton v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir.2001).

▮ The standards by which this Court evaluates class certification motions are well established. In *Hydrogen Peroxide*, we instructed district courts, where appropriate, to " 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.' " 552 F.3d at 316 (quoting *Newton*, 259 F.3d at 167). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* The predominance inquiry is especially dependent upon the merits of a plaintiff's claim, since "the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.' " *Id.* at 310–11 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005)). " 'If proof of the essential elements of the cause of action requires individual treatment,' " then predominance is defeated and a class should not be certified. *Id.* (quoting *Newton*, 259 F.3d at 172).

Defendants argue that the District Court made several errors in certifying the class. First, they claim that the District Court improperly applied a "liberal construction" of Rule 23's requirements for class certification, and failed to conduct a sufficiently rigorous analysis of whether the proposed class satisfied these requirements. Second, they argue that the District Court inadequately described the class definition and the claims at issue in the litigation. Third, they argue that it was improper for the District Court to have decided the class certification motion without deciding whether the market for Constar's stock was "efficient." Fourth, they argue that the District Court should not have found that the predominance re-

quirement could be met with respect to the issues of loss causation and injury. Fifth, they claim that the District Court failed to consider the testimony of their expert when deciding the class certification motion. None of these arguments are convincing.

Our decision is guided by *Hydrogen Peroxide,* which was decided after the District Court granted class certification. Even without the benefit of that case, however, the District Court's application of the class certification standards comported with the guidelines established by this Court.

■ Defendants suggest that the District Court applied a "liberal construction" of Rule 23's requirements for class certification. Defendants' argument relies on a statement that appears in both the Special Master's Report and the District Court's Order: "[This Court] has adopted a liberal construction of Rule 23 when considering shareholder suits, declaring that the interest[s] of justice require[ ] that in a doubtful case . . . any error[,] if there is to be one, should be committed in favor of allowing a class action." (Joint App. 202, 30 (quoting *In re Regal Commc'ns Corp. Sec. Litig.,* No. 94–179, 1995 WL 550454, at *3 (E.D.Pa. Sept.14, 1995) (quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir. 1985))) (internal quotation marks omitted).)

Defendants argue that this statement was representative of the District Court's and Special Master's analyses. However, after noting the language from *Eisenberg,* the Special Master cited the need for a rigorous analysis to meet the requirements of Rule 23, and spent the next twenty-five pages undertaking such an analysis. The Special Master discussed the four requirements of Rule 23(a) (i.e., numerosity, commonality, typicality, and adequacy of representation) in turn, and

addressed defendants' arguments as to each element. The Special Master then considered the predominance and superiority requirements and addressed defendants' arguments on those elements. The District Court reviewed the Special Master's analysis and conclusions and adopted her findings, noting that "after *careful examination* of the substantial materials presented by the parties, the Report *correctly* found that plaintiffs established the elements required by Rules 23(a) and 23(b)(3)." (Joint App. 30–31) (emphasis added). Nowhere in the analysis does the Special Master or the District Court identify a presumption in favor of class certification or suggest that class certification is appropriate in close cases.

In fact, even though this case predates *Hydrogen Peroxide,* the Special Master's analysis and treatment of *Eisenberg* is quite similar to our analysis in that case. In *Hydrogen Peroxide,* we clarified the *Eisenberg* language at issue, stating:

Although the trial court has discretion to grant or deny class certification, the court should not suppress "doubt" as to whether a Rule 23 requirement is met— no matter the area of substantive law. Accordingly, *Eisenberg* should not be understood to encourage certification in the face of doubt as to whether a Rule 23 requirement has been met. *Eisenberg* predates the recent amendments to Rule 23 which, as noted, reject tentative decisions on certification and encourage development of a record sufficient for informed analysis. We recognize the Supreme Court has observed that "[p]re dominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem,* 521 U.S. at 625, 117 S.Ct. 2231. But it does not follow that a court should relax its certification analysis, or presume a requirement for

certification is met, merely because a plaintiff's claims fall within one of those substantive categories.

552 F.3d at 321–22 (certain citations omitted). Similarly, after citing the "liberal" *Eisenberg* language, the Special Master continued: "Nevertheless, since courts may approve class actions only after a rigorous analysis and findings that the class satisfies all the requirements of Rule 23, it is necessary to address each of the four elements of Rule 23(a) and the elements of Rule 23(b)(3)...." (Joint App. 202.)

In sum, defendants' characterization of the class certification standard applied by the District Court is incorrect. Defendants misleadingly emphasize the *Eisenberg* language without discussion of the lengthy class certification analysis by the Special Master that followed in her Report, which was adopted by the District Court. The *Eisenberg* references in the Special Master's Report and the District Court's Opinion were *not* conclusions, but rather a preface to further analysis. Further, there was no "tie breaking" or "erring on plaintiffs' side." The Rule 23 standard applied by the District Court and Special Master was proper.

■ Contrary to defendants' contention, we also find no error in the District Court's description of the class definition and claims at issue in the litigation. Under *Wachtel v. Guardian Life Insurance Co. of America*, 453 F.3d 179, 187–88 (3d Cir.2006), we require that each class certification order contain "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." In *Wachtel*, we found the district court's certification order defective because its "discussion of class claims, issues, or defenses [was] unclear, intermittent, and incomplete," and because it failed to "define which claims, issues, or defenses are to be treated on a class basis for the remainder of the litigation." *Id.* at 189. Here, the District Court and Special Master stated the parameters of the putative class,[2] and outlined how the plaintiffs' claims under §§ 11 and 15 of the Securities Act, and the defendants' affirmative defenses, would proceed on a classwide basis. The District Court's Order was clearly sufficient.

Defendants' principal argument on appeal is that the District Court could not have properly decided the class certification motion without first deciding whether the market for Constar's securities was "efficient." According to defendants, if the market was inefficient, then questions of materiality, loss causation, and injury would need to be decided on an individual basis, and the class would not satisfy the predominance requirement of Rule 23(b)(3). Defendants also contend that if the market was efficient, the alleged misrepresentations could not have caused a loss because subsequent disclosures did not actually correct the misrepresentations or cause Constar's stock price to decline.

■ The error in this reasoning is that plaintiffs' case is brought under § 11 of the Securities Act, rather than § 10(b) of the Exchange Act. A *prima facie* case under § 11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's registration statement. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). That is, § 11 imposes liability "if a registration statement, as of its effective date: (1) contained

**2.** *See supra* note 1.

an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statements therein not misleading." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269 (3d Cir.2006) (internal quotation marks omitted).

We have previously stated that §§ 11 and 10(b) share the tests for materiality, including the test set forth by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.* and the "stock-price test" for materiality in an efficient market. *Merck*, 432 F.3d at 273. Under *TSC*, a "fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). We have also "fashioned a special Rule for measuring materiality in the context of an efficient securities market." *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir.2000). In that context, "the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock." *Id.* Thus, while materiality can be shown by a drop in price in reaction to a disclosure in an efficient market, that does not mean that it is necessary to consider the efficiency of a market in assessing materiality in a § 11 case, whether an individual or class action. Indeed, as is discussed below, it is not at all relevant.

Loss causation under § 11 is even less complex than the materiality inquiry. In a § 11 case, plaintiffs do not have the burden of proving causation, although defendants "may assert, as an affirmative defense, that a lower share value did not result from any nondisclosure or

false statement." *In re Adams Golf Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir.2004). Similarly, plaintiffs do not need to establish reliance on an issuer's statements, unless they purchased the stock more than "twelve months ... after the effective date of the registration statement." 15 U.S.C. § 77k(a).[3] Under § 11(e), the measure of damages is set as the difference between the price paid for a security purchased pursuant to the registration statement, and the price at the time suit was filed or the security was sold. 15 U.S.C. § 77k(e). "[A]ny decline in value is presumed to be caused by the misrepresentation in the registration statement...." *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir.1995). Thus, the elements of a § 11 claim "stand in stark contrast" to those of a claim under the Exchange Act (such as a § 10(b) claim), which requires "a showing of reasonable reliance and scienter." *Adams Golf*, 381 F.3d at 273 n. 5.

Defendants, however, argue that determinations of materiality, loss causation, and injury first require a determination of whether the market for Constar's stock was efficient. This argument is premised on the Efficient Market Hypothesis, which, as described by defendants' expert, Dr. Jarrell, holds that

> as new information causes investors to revise their expectations about future cash flows and growth opportunities, the market price of a security traded in an efficient market responds quickly and rationally to reflect this new information. This means that in an efficient market, information is quickly absorbed by the market and the impact of this information is nearly instantaneously reflected in the market price.

**3.** Plaintiffs here filed suit about ten months after Constar's IPO.

(Joint App. 193–94.) Accordingly, a security's "quoted price always reflects all available information." (Joint App. 194.) On the other hand, "in an inefficient market there is no presumption that all publicly available information is known. Therefore, ... [the] quoted price will not reflect all available information about the stock." *Id.*

As an example, Dr. Jarrell explains that "in an efficient market, an announcement that a company was restating a prior earnings report ... would be immediately incorporated into a company's stock price, and one would expect to see a decline in the quoted price." *Id.* Conversely, in an inefficient market, "[t]he value of any individual's shares would not necessarily have been affected at all by that particular bit of information because the 'mix of information' made available to one investor will tend to vary widely from the 'mix of information' which is available to the next investor." (Joint App. 194–95.) Therefore, in an inefficient market, to determine the importance of new information, "one would need to undertake an investor by investor inquiry." (Joint App. 195.) Such an individualized inquiry would likely defeat Rule 23's predominance requirement.

 The Efficient Market Hypothesis can be useful in assessing the materiality of misrepresentations in securities actions, including § 11 claims and claims made under § 10(b) of the Exchange Act. As noted above, we have previously held that a drop in stock price in an efficient market is one way to show materiality. *Oran*, 226 F.3d at 282. Defendants, however, leap from this principle to a sweeping assertion that, in an inefficient market, materiality is necessarily an investor-by-investor inquiry because, "when a market lacks efficiency, there is no assurance that the market price was affected by the defendant's alleged misstatement at all. In-

stead, the price may reflect information wholly unrelated to the misstatement." Appellants' Br. at 52 (quoting *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 8 (1st Cir.2005)). Not surprisingly, *PolyMedica*, and many of the other cases defendants cite for this proposition, are § 10(b) cases, where a plaintiff-investor's reliance on a defendant's misrepresentations is a crucial element of each case. However, reliance is *not* an element under § 11. *Adams Golf*, 381 F.3d at 273 n. 5. As the District Court noted, because reliance is not an element under § 11, "the conduct of the defendants, not the knowledge of the plaintiffs, is determinative" of materiality. (Joint App. 28.) The crucial questions are: "[W]as there a misrepresentation? And, if so, was it objectively material?" (Joint App. 29.) Since reliance is irrelevant in a § 11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge (except where more than twelve months have passed since the registration statement became effective). Further, because a misrepresentation is material if a reasonable investor would have considered a fact important, the effect of a material misrepresentation is felt uniformly across the class of investors, regardless of whether the market is efficient. Since this is an objective standard, materiality is not determined, as Dr. Jarrell contends, by the "mix of information" available to each individual plaintiff.

Defendants also maintain that plaintiffs have failed to prove that loss causation and injury were common issues that would predominate, and urge that the District Court erred by holding otherwise. They analogize their case to *Newton*, where, "[b]ecause plaintiffs' claims ... require[d] an economic injury determination for each trade," the class failed "to satisfy the predominance requirement." 259 F.3d at 190.

Again, defendants' argument might be persuasive if this were a § 10(b) case. Section 11 does not require a showing of individualized loss causation, because injury and loss are presumed under § 11. It bears repeating that, in a § 11 case, plaintiffs do not bear the burden of proving causation, damages are calculated as the difference between the purchase price of a security and the price at the time suit was filed or the security was sold, and any decline in value is presumed to be caused by the misrepresentation. 15 U.S.C. § 77k(e); *Adams Golf,* 381 F.3d at 277; *McMahan,* 65 F.3d at 1048; *see also Alaska Elec. Pension Fund v. Flowserve Corp.,* 572 F.3d 221, 234 (5th Cir.2009) (per curiam).

We also note that, although loss causation is an affirmative defense in a § 11 case, this defense would not defeat predominance here. Section 11(e) allows defendants to "limit damages by showing that plaintiffs' losses were caused by something other than their misrepresentations." *Merck,* 432 F.3d at 274. Any affirmative defense on this ground would present a *common* issue—not an individual one. If something other than the alleged misrepresentations produced a drop in stock price, be it the weather, market conditions, or any other factor, class members would be affected uniformly. If, for example, Investors X, Y, and Z all purchase Security A, and Security A's price happens to fall dramatically in the ensuing months, the cause of that decline would not differ as to each investor.

Relying on *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), defendants argue that to establish loss causation, plaintiffs must show that Constar's misrepresentations were actually corrected by its subsequent disclosures. It urges that this is not the case here and, therefore, that each trade must be individually analyzed.

As the Special Master pointed out, defendants' reliance upon *Dura* is misplaced. *Dura* addressed how plaintiffs in a § 10(b) case can satisfy the requirement that they prove that a misrepresentation "proximately caused the plaintiff[s'] economic loss." 544 U.S. at 346, 125 S.Ct. 1627. The Court held that the "loss" element could not be proven by merely showing that a misrepresentation caused the price of a security to be inflated at the time of purchase; rather, it must be shown that the misrepresentation actually caused a later economic loss. *Id.* at 342–43, 125 S.Ct. 1627. Since loss causation is presumed, and loss is easily proven, in the § 11 context, *Dura* is totally inapposite.[4]

In sum, on both the materiality and loss causation fronts, we find the market efficiency issue to be a red herring. The formulaic nature of § 11 leaves defendants with little room to maneuver. Were this a

---

**4.** Defendants' support for their position that *Dura* applies in the § 11 context consists of only inapposite unpublished opinions and cases decided before *Dura.* For instance, *McKowan Lowe & Co. v. Jasmine, Ltd.,* 231 Fed.Appx. 216, 218 (3d Cir.2007), is of little relevance here since plaintiffs' claims there were disposed of because plaintiffs could not point to any corrective disclosures—direct or indirect—revealing the alleged misrepresentations. Plaintiffs here, as the Special Master recognized, allege a substantial loss occurring *after* the July disclosures. *McKowan* says nothing about *Dura's* applicability to this sort of § 11 claim, where plaintiffs *can* point to a corrective disclosure. In re Alamosa Holdings, Inc. Securities Litigation, 382 F.Supp.2d 832, 865–66 (N.D.Tex.2005), was decided prior to *Dura,* and the court dismissed the § 11 claim because the alleged misrepresentations occurred after the registration statement was filed. Similarly, *In re Merrill Lynch & Co. Research Securities Litigation,* 272 F.Supp.2d 243, 253–255 (S.D.N.Y.2003), was decided before *Dura.*

§ 10(b) claim, or another claim requiring reliance and proof of loss causation, the efficiency issue might be instructive, if not dispositive. However, where reliance and loss causation are not part of the equation, an individualized inquiry is not required.

Both the Special Master and the District Court reached a similar conclusion and, contrary to defendants' suggestion, properly disposed of the market efficiency issue before certifying the class. *Hydrogen Peroxide* held that a lower court adjudicating a Rule 23 motion "must make whatever factual and legal inquiries are necessary ... even if they overlap with the merits" and, in doing so, "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." 552 F.3d at 307, 316 (citations and internal quotation marks omitted). Here, although neither the District Court nor the Special Master had the benefit of *Hydrogen Peroxide*'s instructions, both "delved" into the market efficiency issue, and both correctly dismissed the argument that the issue of market efficiency would affect predominance.

Defendants also argue that the District Court improperly ignored their expert's testimony. It is true that "a court's obligation to consider all relevant evidence and arguments extends to expert testimony." *Hydrogen Peroxide,* 552 F.3d at 307. As the above analysis might indicate, however, we believe that the District Court gave adequate consideration to defendants' expert testimony. Both the District Court and the Special Master extensively addressed Dr. Jarrell's discussion of the effects of the Efficient Market Hypothesis on the materiality inquiry and Rule 23's predominance requirement. By contrast, the district court in *Hydrogen Peroxide* erroneously believed that "it was barred from resolving disputes between the plaintiffs' and defendants' experts" and there-fore failed to consider "all relevant evidence and arguments, including relevant expert testimony of the parties," as required by Rule 23. *Id.* at 325. Here, the District Court did not ignore or dismiss Dr. Jarrell's opinion; it found it inapplicable to the case.

It is interesting to note, as well, that defendants' expert did not specifically address the effect of market efficiency on the predominance requirement in a § 11 class certification. Indeed, Dr. Jarrell makes no mention of either Constar stock or § 11 in his report. This is despite the fact that Dr. Jarrell is a former Chief Economist of the SEC and is, presumably, as qualified as anyone could be to make that argument. Doubtless, defendants' argument would be much more convincing could they point to *any* authority, expert or otherwise, for the proposition that this theory is relevant in a § 11 case.

For the reasons set forth above, we will AFFIRM the Order of the District Court.