**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID HILDES, individually and as Trustee of The David and Kathleen Hildes 1999 Charitable Remainder Unitrust dated June 25, 1999, *Plaintiff-Appellant*, | No. 11-56592 <br><br> D.C. No. 3:08-cv-00008-BEN-RBB |
| v. | |
| ARTHUR ANDERSEN LLP; THOMAS G. WATROUS, SR.; DOUGLAS S. POWANDA; JOHN DOE, as the Executor of the Estate of David A. Farley, *Defendants-Appellees*, | OPINION |
| and | |
| JOHN J. MOORES; CHRISTOPHER A. COLE; RICHARD A. HOSELY; CHARLES A. NOELL, III; NORRIS VAN DEN BERG, Outside Directors, *Intervenors-Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
June 7, 2013—Pasadena, California

Filed August 19, 2013

Before: Stephen S. Trott, Carlos F. Lucero[*],
and William A. Fletcher, Circuit Judges.

Opinion by Judge Lucero

## SUMMARY[**]

### Securities

Reversing the dismissal of a securities fraud action, the panel held that the district court erred by denying the plaintiff leave to amend his complaint to add claims under § 11 of the Securities Act of 1933 against former outside directors of Peregrine Systems, Inc.

The panel held that the district court erred in concluding that amendment would be futile because the "negative causation" defense barred the proposed claims. The panel held that the plaintiff sufficiently alleged that material misstatements in a registration statement caused his losses even though prior to the filing of the registration statement he had entered into an agreement that his shares in Harbinger Corp. be voted in favor of a merger between Peregrine and Harbinger. The panel reasoned that the plaintiff did not

---

[*] The Honorable Carlos F. Lucero, Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

irrevocably commit to exchange his Harbinger shares for Peregrine shares prior to the filing of the registration statement. In addition, he alleged that if Peregrine's registration statement had contained accurate information, then the merger would not have taken place, and his voting agreement and proxy would have terminated.

## COUNSEL

Michael A. Lynn (argued), Steven C. Chin, and Allan M. Pepper, Kaye Scholer, LLP, New York, New York; Robert G. Barnes, Kaye Scholer, LLP, Los Angeles, California, for Plaintiff-Appellant.

Harry A. Olivar, Jr. (argued), John B. Quinn, Valerie Roddy, and Molly Stephens, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, California, for Intervenors-Appellees.

Anne H. Hartman and Wayne T. Lamprey, Goodin MacBride Squeri Ritchie & Day LLP, San Francisco, California; Robert H. Logan, Keesal, Young & Logan, Long Beach, California, for Defendants-Appellees.

## OPINION

LUCERO, Circuit Judge:

David Hildes appeals from a district court order denying leave to amend his complaint. Hildes sought to add a claim under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, against former outside directors of Peregrine Systems, Inc. ("Peregrine"). The district court concluded that

amendment would be futile because the "negative causation" defense barred Hildes' proposed claim. It noted that Hildes entered into a Voting Agreement and Irrevocable Proxy with Peregrine, which required that Hildes' shares in Harbinger Corporation ("Harbinger") be voted in favor of a merger between the two companies. Because that agreement was executed before Peregrine filed an S-4/A registration statement ("Registration Statement") with the SEC that is alleged to contain various omissions and misstatements, the district court concluded that any misrepresentations in the Registration Statement could not have caused Hildes' losses.

We reject this reasoning. Section 11 imposes broad liability without regard to reliance or fraudulent intent for any material misstatements or omissions contained in a registration statement for the first year that the registration statement is available. 15 U.S.C. § 77k(a). Although Hildes agreed to have his Harbinger shares voted in favor of the merger with Peregrine, he did not irrevocably commit to exchange those shares for Peregrine shares prior to the filing of the Registration Statement. Moreover, Hildes alleges that if Peregrine's Registration Statement had contained accurate information, the merger would not have taken place, and Hildes' Voting Agreement and Irrevocable Proxy would have terminated. Accordingly, Hildes sufficiently alleged that the material misstatements caused his losses, and thus amending the complaint would not be futile. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

# I

In early 2000, Peregrine, a publicly traded software company, began merger discussions with Harbinger, an Atlanta-based provider of business-to-business e-commerce

software products.[1]  Hildes was a director of Harbinger and beneficially owned 1,384,217 shares of Harbinger common stock.

On April 5, 2000, the two companies entered into an Agreement and Plan of Merger and Reorganization ("Merger Agreement").  Under the terms of the Merger Agreement, Harbinger's board would recommend the merger to its shareholders.  Harbinger would become a wholly-owned subsidiary of Peregrine, and each outstanding share of Harbinger common stock would be exchanged for 0.75 shares of Peregrine common stock.  Harbinger's obligations to effect the merger were subject to certain conditions, including:  (1) approval of the merger by each company's shareholders; (2) acceptance by the SEC of the then to-be-filed S-4 Registration Statement, with no pending or threatened action; (3) satisfaction that each Peregrine representation and warranty contained in the Merger Agreement was true and correct as of both the date of the Merger Agreement and the date of closing of the merger; and (4) performance by Peregrine of all agreements and covenants in the Merger Agreement.

Article VII of the Merger Agreement provided for termination under certain circumstances, including:  (1) by

---

[1] We accept as true all well-pleaded, non-conclusory allegations contained in a proposed complaint.  *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819–20 (9th Cir. 2001).  Accordingly, the foregoing facts are drawn from Hildes' proposed second amended complaint and the documents upon which it necessarily relies.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (court may look to documents upon which complaint relies if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the" document).

either company if the merger was not consummated by October 31, 2000; (2) by either company if the required approval of shareholders was not obtained; or (3) by Harbinger "upon a breach of any representation, warranty, covenant or agreement" by Peregrine, "or if any representation or warranty of [Peregrine] shall have become untrue." Peregrine warranted that "[n]one of the information supplied or to be supplied by [Peregrine] for inclusion or incorporation by reference in . . . the S-4 will, at the time the S-4 becomes effective under the Securities Act, contain any untrue statement of a material fact or omit to state any material fact . . . ."

As a condition to the Merger Agreement, Hildes and certain of Harbinger's shareholders executed voting agreements with Peregrine in which each granted Peregrine an irrevocable proxy to vote his or her Harbinger shares in favor of the merger. Hildes' Voting Agreement and Irrevocable Proxy automatically terminated on the earlier of (1) the Merger Agreement's termination pursuant to Article VII, or (2) the effective date of the merger. His proxy was irrevocable "to the fullest extent permissible by law." Hildes was permitted to sell his Harbinger shares prior to the merger, but only if the purchaser executed a counterpart to the Voting Agreement and Irrevocable Proxy.

On May 22, 2000, Peregrine filed its Registration Statement with the SEC in connection with the merger. It included financial statements audited by Arthur Andersen LLP ("Andersen") and allegedly contained various material omissions and misrepresentations. Specifically, Hildes alleges that Peregrine overstated its revenue by over $120 million and understated its net losses by over $190 million.

The former Peregrine outside directors named as defendants in the suit at bar signed the Registration Statement.

Shareholders of both companies subsequently approved the merger, and on June 16, 2000, the transaction was completed. Peregrine issued approximately thirty million shares of Peregrine common stock in exchange for all outstanding shares of Harbinger common stock. According to Hildes, as a result of Peregrine's fraud, Peregrine's stock price was artificially inflated to a price of $25.56 per share as of the closing date of the merger.

On June 30, 2003, the SEC filed a complaint against Peregrine in the United States District Court for the Southern District of California, alleging financial fraud in which Peregrine had "filed materially incorrect financial statements with the [SEC] for 11 consecutive quarters between April 1, 1999 and December 31, 2001." Peregrine later consented to a final judgment enjoining it from further violations of the securities laws and requiring Peregrine to establish internal compliance procedures.

A consolidated class action was also brought by Peregrine shareholders for financial statement fraud. *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-CV-870 (S.D. Cal. filed May 6, 2002). That class entered into settlement agreements with certain defendants, from which Hildes opted out. Hildes filed his own lawsuit in the United States District Court for the District of New Jersey, later transferred to the Southern District of California, against defendants Andersen, Thomas Watrous, Douglas Powanda, and John Doe as the Executor of the Estate of David Farley. He stated Section 11 claims against Andersen, Watrous, and Doe, along with several other claims not at issue in this appeal.

Andersen filed a motion to dismiss the claims against it. In response, Hildes moved for leave to amend his complaint to add scienter allegations as to Andersen and to add as defendants former Peregrine directors John Moores, Charles Noell, III, Richard Hosley, Norris Van Den Berg, and Christopher Cole. Hildes' proposed second amended complaint asserted Section 11 claims against all of the individual defendants. The new proposed defendants moved to intervene to oppose Hildes' motion to amend.

On July 19, 2010, the district court granted Andersen's motion to dismiss, granted the outside directors' motion to intervene, and denied Hildes' leave to amend his complaint to add claims against the outside directors on grounds of futility. The court determined that Hildes entered into a binding commitment to exchange his shares for Peregrine's shares as a matter of law when he signed his Voting Agreement and Irrevocable Proxy on April 5, 2000, prior to the Registration Statement's effective date. It thus concluded that any alleged loss was not logically to be attributed to misrepresentations or omissions in the Registration Statement.

Hildes unsuccessfully sought certification of the district court's order under Fed. R. Civ. P. 54(b). Following disposition of Hildes' remaining claims, the district court entered final judgment. Hildes filed a timely notice of appeal, and now raises a single issue: whether the district court erred in denying him leave to amend his complaint to bring a Section 11 claim against the directors.[2]

---

[2] The claims against Defendant Watrous were dismissed by stipulation, but Watrous has agreed to be bound by any decision of this Court with respect to the other directors. Hildes thus appeals the dismissal of his

## II

We review de novo a district court's denial of leave to amend on grounds of futility. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Although leave to amend is to be "freely given when justice so requires," denial of a motion to amend is proper if it is clear "that the complaint would not be saved by any amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (internal quotation marks omitted).

Section 11 of the Securities Act of 1933 imposes liability on "every person who signed [a] registration statement" containing "an untrue statement of a material fact or" one that "omitted to state a material fact required . . . to make the statements therein not misleading." 15 U.S.C. § 77k(a). The statute provides that "any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may . . . sue . . ." *Id.* It further provides:

> If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration

Section 11 claim against Watrous for the limited purpose of including him in this appeal.

> statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person.

*Id.* The plain text of Section 11 thus imposes a reliance element only as to investors who purchased a security at least twelve months after the registration statement became effective.

The Supreme Court has recognized that Section 11 "places a relatively minimal burden on a plaintiff." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983). "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Id.* at 381–82 (footnotes omitted). As long as "a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case." *Id.* at 382. "Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Id.* (footnote omitted).

As numerous courts have held, and the appellees in this case concede, a plaintiff who purchases a security within twelve months of the registration statement need not show reliance to bring a Section 11 claim. *See Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 102 (1st Cir. 2013) ("[U]nlike § 10(b) of the Securities and Exchange Act, § 11 does not have a scienter or reliance requirement . . . ."); *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 (2d Cir. 2011) ("[P]laintiffs alleging violations of Section[] 11 . . . need [not] plead scienter, reliance, or loss causation." (internal quotation marks omitted)); *In re Constar Int'l Inc.*

*Sec. Litig.*, 585 F.3d 774, 784 (3d Cir. 2009) ("Since reliance is irrelevant in a § 11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge (except where more than twelve months have passed since the registration statement became effective)."). This court, among several, has also noted that Section 11 lacks a scienter requirement. *See Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1404 (9th Cir. 1996) ("No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." (internal quotation marks omitted)); *see also Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005) ("Section 11's liability provisions are expansive—creating virtually absolute liability for corporate issuers for even innocent material misstatements . . . ." (internal quotation marks omitted)); *Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.)*, 130 F.3d 309, 315 (8th Cir. 1997) ("To establish a prima facie § 11 claim, a plaintiff need show only that he bought the security and that there was a material misstatement or omission. Scienter is not required for establishing liability under this section.").

Despite the general rule that a plaintiff need not demonstrate reliance on a misleading registration statement in order to prevail on a Section 11 claim, the district court determined that because Hildes entered into his Voting Agreement and Irrevocable Proxy prior to the issuance of Peregrine's fraudulent Registration Statement, Hildes' claim was barred under the doctrine of "negative causation." The affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement. *See* 15 U.S.C. § 77k(e); *see also McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2nd Cir.

1995). This court recognized the doctrine in *Miller v. Pezzani (In re Worlds of Wonder Sec. Litig.)*, 35 F.3d 1407 (9th Cir. 1994), under the name "loss causation." *Id.* at 1421. "The defendant has the burden of proof on this defense," and bears a "heavy burden." *Id.* at 1422 (internal quotation marks omitted). A defendant must show "that the depreciation in value" of a plaintiff's stock "resulted from factors other than the alleged material misstatement." *Id.* (alteration and internal quotation marks omitted).

According to the district court, Hildes' losses could not have been caused by the misleading Registration Statement because Hildes made a binding commitment to exchange his Harbinger shares for Peregrine stock when he signed his Voting Agreement and Irrevocable Proxy on April 5, 2000, prior to the date misrepresentations were made in the Registration Statement. We disagree. Although the Voting Agreement and Irrevocable Proxy irrevocably committed Hildes to have his shares voted in favor of the merger, it did not irrevocably commit him to exchange his Harbinger shares for Peregrine shares. Any exchange of shares remained contingent on the consummation of the merger. As Hildes plausibly alleges in his proposed second amended complaint, the merger would not have occurred had the Registration Statement been truthful.

Hildes provides several theories under which the planned merger would have collapsed but for the misrepresentations in the Registration Statement. First, the proposed second amended complaint alleges that the Harbinger board would have declared Peregrine to be in breach of the Merger Agreement for providing materially false and misleading information in the Registration Statement, and terminated the Merger Agreement under Article VII. Had the Merger

Agreement been terminated, Hildes' Voting Agreement and Irrevocable Proxy would have expired. Second, the proposed complaint alleges that a majority of Harbinger shares would have voted against the merger had the Registration Statement been truthful. Under this scenario, Hildes' Harbinger shares would not have been exchanged for Peregrine stock. Given the allegation that more than 85% of Harbinger shares were not bound by proxy agreements, coupled with the magnitude of the alleged financial misstatements, these allegations provide a second plausible theory under which the Registration Statement's misrepresentations caused Hildes' loss.

Hildes also identifies several means by which he could have personally avoided the exchange of shares had the Registration Statement disclosed ongoing accounting irregularities by Peregrine. He could have attempted to sell his Harbinger shares to a third party (provided the third party executed a counterpart to the Voting Agreement and Irrevocable Proxy), sought to rescind the Voting Agreement and Irrevocable Proxy based on a claim of fraudulent inducement, or filed a shareholder suit seeking to enjoin the merger.

We conclude that the outside directors have not met their "heavy burden" of "prov[ing], as a matter of law, that the depreciation of the value of [the security] resulted from factors other than the alleged false and misleading statements." *Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996) (internal quotation marks omitted). Overcoming a negative causation defense requires merely that "the misrepresentation *touches upon* the *reasons* for an investment's decline in value." *In re Worlds of Wonder*, 35 F.3d at 1422 (internal quotation marks omitted).

Misrepresentations contained in Peregrine's Registration Statement certainly "touch[ed] upon" the decline in value of Hildes' investments because, he alleges, the merger would have failed but for those misrepresentations. Had the merger not been completed, Hildes would have retained Harbinger stock rather than obtaining shares in Peregrine.

Contrary to the directors' assertions, this is not a case in which "the decision is made and the parties are committed to the transaction" prior to the effective date of a registration statement. *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1267 (11th Cir. 2007). In *APA Excelsior*, the Eleventh Circuit concluded that a Section 11 claim necessarily fails if a sophisticated investor "participating in an arms-length corporate merger make[s] a legally binding investment commitment months before the filing of a defective registration statement." *Id.* at 1277. The outside directors place great emphasis on this case, noting the striking resemblance of facts. There, a target corporation's shareholders brought a Section 11 claim against an acquiring corporation and certain directors and officers, alleging misrepresentations in a registration statement. *Id.* at 1264–65. Prior to the effective date of the registration statement at issue, the target corporation had entered into a stock-for-stock merger agreement, the board had voted to recommend the merger to the shareholders, and plaintiffs had granted irrevocable proxies binding themselves to have their shares voted in favor of the merger. *Id.* at 1264.

The Eleventh Circuit held that plaintiffs' Section 11 claim failed as a matter of law because "reliance [wa]s rendered impossible by virtue of a pre-registration commitment." *Id.* at 1272 (footnote omitted). "[B]y virtue of their binding commitment decision," the court determined, plaintiffs

"effectively 'purchased' their [acquiring company's] stock months before the registration statement was filed." *Id.* at 1276. Significantly, because it deemed the issue waived, the court in *APA Excelsior* declined to consider plaintiffs' argument that they "were not fully committed to the merger before the registration statement because their commitment was revocable." *Id.* at 1269–70.

In the present case, as noted above, we have concluded that Hildes was not irrevocably bound to exchange his Harbinger shares for Peregrine stock at the time the Registration Statement was filed. Rather, misrepresentations contained in the Registration Statement played a role in the causal chain that resulted in the exchange of stock. We are thus not presented with the issue decided in *APA Excelsior*. Although that court did not consider whether plaintiffs were committed to exchange stock based on a set of agreements similar to those at issue in this case, it did note that a plaintiff seeking to recover under Section 11 "need only show a material misstatement and/or omission in the registration statement and be able to 'trace' the security he acquired to that defective statement." *Id.* at 1271 (citations omitted). Hildes' allegations satisfy this traceability requirement.

Other cases relied upon by the outside directors are also inapposite. In *In re HealthSouth Corp. Securities Litigation*, 261 F.R.D. 616 (N.D. Ala. 2009), the court held that plaintiffs who purchased unregistered bonds with the intent of converting them to registered bonds after the filing of a registration statement could not assert a Section 11 claim. *Id.* at 647. It explained that the decision to purchase the unregistered bonds was made prior to filing of the registration statement and thus causation was impossible. *Id.* The court rejected plaintiffs' theory that the SEC would not have

permitted the registration statement to become effective had it been truthful—and thus the unregistered bonds would not have been exchanged for registered bonds—because in that hypothetical scenario plaintiffs "would have been stuck with" the less valuable unregistered bonds and thus the loss "would have occurred" anyway. *Id.* at 648. Accordingly, the court concluded that plaintiffs' losses were "not traceable to a registration statement and no basis arises for a Section 11 claim." *Id.*; *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 634, 636 (S.D.N.Y. 2007) (concluding alleged misrepresentations were immaterial given that unregistered bondholders would have incentive to exchange their bonds for registered ones regardless of contents of registration statement, and thus plaintiffs were not "caused to suffer damages"). As the foregoing discussion demonstrates, however, Hildes' losses can be causally traced to the misrepresentations contained in the Registration Statement.

This case is more analogous to *SEC v. National Student Marketing Corp.*, 457 F. Supp. 682 (D.D.C. 1978). That case also involved a stock-for-stock merger of two companies. *Id.* at 688-89. After the merger agreement was executed, but before the transaction closed, the acquiring company made certain adjustments to its interim financials. *Id.* at 691. The SEC charged various individuals with Securities Act violations for failing to disclose this material information. *Id.* at 699-700. Defendants contended that there was no nexus between their conduct and the "sale" of stock because the principals of the target corporation had already committed themselves to the merger. *Id.* at 702. However, the court concluded that the plaintiffs "had no expectation or duty to proceed with the sales if the merger was aborted" and that "[s]uch a conditional commitment is not what the courts had in mind when setting the time of commitment as the critical

point for antifraud analysis." *Id.* at 704 (footnote omitted). Because the "Merger Agreement specifically stated that the obligation of either company to proceed with the merger was subject to the performance of certain conditions," the court held that it did not create "a binding, irrevocable commitment." *Id.*

As with the purchasers in *National Student Marketing Corp.*, Hildes was not obliged to obtain Peregrine stock at the time the Registration Statement was filed. His commitment to the exchange of shares was contingent on a number of conditions, and he plausibly alleges that the misrepresentations contained in the Registration Statement caused those conditions to occur. Under these circumstances, we do not observe any flaw in Hildes' claim that his losses were caused by misrepresentations in Peregrine's Registration Statement.

In concluding that Hildes entered into a binding commitment to purchase Peregrine stock prior to the Registration Statement's effective date, the district court conflated the issue of loss causation and the question of whether the Registration Statement's misrepresentations caused Hildes to enter into the Voting Agreement and Irrevocable Proxy in the first place. *See Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 369 (S.D.N.Y. 1984) (negative causation defense to Section 11 claim "does not focus on the causal relationship between the misstatement and the original purchase, but rather on the relationship between the misstatement and any subsequent decline in value"), *aff'd in part and dismissed in part on other grounds*, 810 F.2d 336 (2d Cir. 1987). Hildes' proposed second amended complaint alleges that he purchased Peregrine stock—through the post-Registration Statement exchange of shares—issued and sold

pursuant to a misleading registration statement,[3] and that his subsequent losses were caused by the misrepresentations in that registration statement.  This is enough to state a Section 11 claim.  *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (noting heightened pleading standards of the Private Securities Litigation Reform Act of 1995 do not apply to Section 11 claims and that Fed. R. Civ. P. 9(b) applies only if the complaint sounds in fraud); *see also Silverstrand Invs.*, 707 F.3d at 102 (because Section 11 does not have a reliance requirement, "neither the heightened pleading standard of Fed. R. Civ. P. 9(b) nor of the Private Securities Litigation Reform Act applies unless a § 11 claim sounds in fraud"); *Provenz*, 102 F.3d at 1492 (although defendants bear a heavy burden of proof in establishing negative causation, a plaintiff can establish loss causation by "simply alleging that the false and misleading statements touch upon the reasons for the investment's decline in value" (alteration and internal quotation marks omitted)).

---

[3] SEC Rule 145 provides:

> An offer, offer to sell, offer for sale, or sale shall be deemed to be involved, within the meaning of section 2(3) of the [Securities] Act, so far as the security holders of a corporation or other person are concerned where . . . there is submitted for the vote or consent of such security holders a plan or agreement for . . . [a] statutory merger or consolidation or similar plan or acquisition in which securities of such corporation or other person held by such security holders will become or be exchanged for securities of any person . . . .

17 C.F.R. § 230.145(a)(2).  Under this definition, Hildes' exchange of stock did not become a "sale" under the Securities Act until the merger plan was submitted to Harbinger shareholders for a vote, after the issuance of Peregrine's Registration Statement.

Because the misrepresentations contained in the Registration Statement allegedly caused the ultimate exchange of Hildes' Harbinger shares for Peregrine stock, we disagree with the district court's conclusion that the negative causation defense applies. And because the exchange of shares—which occurred after the Registration Statement was filed—constituted Hildes' acquisition of those securities pursuant to a registration statement, he has stated a potentially meritorious Section 11 claim.

## III

For the foregoing reasons, the judgment of the district court is **REVERSED**. The case is **REMANDED** for further proceedings consistent with this opinion.