NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 7 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In Re: ON24, INC. SECURITIES LITIGATION,

LEADERSEL INNOTECH ESG,

       Plaintiff - Appellant,

 v.

ON24, INC.; SHARAT SHARAN; STEVEN VATTUONE; DENISE PERSSON; HOLDGER STAUDE; DOMINIQUE TREMPONT; BARRY ZWARENSTEIN; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; KEYBANC CAPITAL MARKETS INC.; ROBERT W. BAIRD & CO. INCORPORATED; CANACCORD GENUITY LLC; NEEDHAM & COMPANY, LLC; PIPER SANDLER & CO.; WILLIAM BLAIR & COMPANY, L.L.C.; IRWIN FEDERMAN,

       Defendants - Appellees.

No. 24-2204

D.C. No.
4:21-cv-08578-YGR

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California

---

    * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted March 4, 2025
Submission Vacated August 26, 2025
Resubmitted January 5, 2026
Pasadena, California

Before: MURGUIA, Chief Judge, and SANCHEZ and H.A. THOMAS, Circuit Judges.

Leadersel Innotech ESG ("Leadersel") brings this class action on behalf of all persons and entities who purchased or otherwise acquired Defendant ON24, Inc.[1] ("ON24") publicly traded common stock pursuant to the public offering documents issued in connection with ON24's initial public offering ("IPO").[2] Leadersel alleges that the public offering documents contained six materially misleading statements. These statements allegedly omitted facts related to ON24's material churn—the rate at which customers discontinue their relationship with the business—that occurred in advance of the IPO and the change in ON24's customer base. Leadersel offers two distinct theories of liability related to the alleged omissions: (1) a primary violation of Section 11 of the Securities Act of 1933, and (2) a violation of Item 303

---

[1] ON24 is a company that offers an online platform to businesses to generate revenue through interactive webinars, virtual events, and multimedia content experiences.

[2] Defendants are the following: ON24, Inc.; Sharat Sharan, Steven Vattuone, Irwin Federman, Denise Persson, Holger Staude, Dominique Trempont, and Barry Zwarenstein (together, "Individual Defendants"); and Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, KeyBanc Capital Markets Inc., Robert W. Baird & Co. Incorporated, Canaccord Genuity LLC, Needham & Company, LLC, Piper Sandler & Co., and William Blair & Company, L.L.C. (together, "Underwriter Defendants").

of Securities and Exchange Commission ("SEC") Regulation S-K.[3]  Leadersel also alleges that the individually named defendants—officers and directors of ON24—are liable under Section 15 for directing and controlling ON24 when these alleged Section 11 violations occurred.  The district court dismissed the complaint with prejudice.  We have jurisdiction under 28 U.S.C. § 1291.  We affirm in part and reverse in part and remand.

We review the district court's order dismissing the complaint de novo. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017).  "Review is limited to the contents of the complaint . . . [and a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).  We may affirm on any ground supported by the record. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013).

1. We affirm the district court's dismissal of claims that are based on Statement 3.  "[S]ection 11 of the 1933 Securities Act creates a private remedy for any purchaser of a security if 'any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements

---

[3] After publication of the Court's decision in *Sodha v. Golubowski*, 154 F.4th 1019 (9th Cir. 2025), Leadersel withdrew its 17 C.F.R. § 229.105 ("Item 105") claim.

therein not misleading.'" *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting 15 U.S.C. § 77k(a)), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). Statement 3, describing ON24's belief that it had the opportunity to achieve significant future growth is a forward-looking opinion that would not have misled a reasonable investor. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186, 189–90 (2015) (holding that "opinions sometimes rest on a weighing of competing facts[,]" and "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong").

2. We reverse the district court's dismissal of Section 11 claims based on the remaining five statements: Statement 1, describing a "highly engaged and loyal customer base"; Statement 2, recognizing acceleration in revenue growth rate due to the COVID-19 pandemic; Statement 4, describing a potential reduction in product demand post-pandemic; Statement 5, describing a potential decline in the revenue growth rate post-pandemic; and Statement 6, describing the possibility that subscription renewals and upselling may decline in the future.

To allege a Section 11 claim, a plaintiff must show "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d

1156, 1161 (9th Cir. 2009) (internal quotations and citation omitted). "Section 11 does not require the disclosure of all information a potential investor might take into account when making his decision." *Id.* at 1163. However, at the pleading stage, "Section 11 places a relatively minimal burden on a plaintiff[:] . . . he need only show a material misstatement or omission to establish his prima facie case." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (internal quotations and citation omitted). Because Leadersel's Section 11 claim does not "sound in fraud," it must only meet Rule 8(a)'s ordinary notice pleading requirements. *Daou*, 411 F.3d at 1027.

Construing the allegations in the light most favorable to Leadersel, the complaint contains plausible allegations, corroborated by confidential witnesses[4], that, during the COVID-19 pandemic, atypical customers engaged ON24 for short-term subscriptions of one-year or less and informed ON24 of their intent to either downsell—downgrade to a cheaper subscription—or not renew these short-term subscriptions. The complaint contains plausible allegations that ON24 systematically tracked its data regarding customer churn risk and actual churn occurrences. The complaint also contains plausible allegations that atypical customer churn and downsell began to occur prior to the 2021 IPO and continued

---

[4] Leadersel relies on the statements of eight former ON24 employees to substantiate its allegations.

thereafter when ON24 failed to meet its projected mid-year revenue goals within months after the IPO. Accordingly, Leadersel sufficiently alleges that ON24 knew that the risk of material churn and downselling had started to come to fruition before the IPO yet disclosed only that those risks *may* occur. "Risk disclosures that speak entirely of as-yet-unrealized risks and contingencies and do not alert the reader that some of these risks may already have come to fruition can mislead reasonable investors." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985–87 (9th Cir. 2008) (internal quotations and alterations omitted)). Leadersel's allegations, if taken as true, are consistent with Leadersel's theory that the change in customer base negatively impacted ON24's future growth rate and that the change should have been specifically disclosed to potential stockholders.[5] As such, Leadersel adequately pled its Section 11 claim.

3. We also reverse the district court's dismissal of Leadersel's alleged 17 C.F.R. § 229.303 ("Item 303") violation. Item 303 requires the registrant to "'[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or

---

[5] The district court erred by improperly relying on judicially noticed revenue and ARR data to dispute Leadersel's plausible theory of liability. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (explaining that it is improper for a district court "to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint").

income from continuing operations.'" *Sodha*, 154 F.4th at 1037 (alteration in original) (quoting 17 C.F.R. § 229.303(b)(2)(ii)). "Item 303 'specifies its own standard for disclosure—*i.e.*, reasonably likely to have a material effect' and requires more disclosure than the materiality test typically used in securities law." *Id.* at 1041 (quoting *In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1055 (9th Cir. 2014)).

Leadersel alleges that ON24 violated Item 303 because the risk disclosures did not disclose the change in customer profiles that occurred before the IPO, ON24 leadership's knowledge of several customers' intent not to renew or intent to downsell, and ON24 leadership's knowledge of churn with six-month contracts leading up to the IPO. Leadersel further alleges that ON24's leadership methodically tracked this information in ON24's Salesforce software and held meetings with ON24 management regarding customers' churn risk leading up to the IPO. These allegations are sufficient at this stage to allege a violation of Item 303. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (holding that when future impacts are reasonably likely to occur, "they cease to be optional forecasts and instead become present knowledge subject to the duty of disclosure").

4. Because we reverse, in part, the district court's dismissal of Plaintiffs' Section 11 claims, we also reverse the dismissal of the derivative Section 15 claim. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) (explaining that a Section 15 claim requires an underlying primary violation of

securities law).

**AFFIRMED** in part, **REVERSED** in part, **AND REMANDED**.  The

parties shall bear their own costs on appeal.