FILED

03/18/2022

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 2, 2021 Session

## IN RE SMILEDIRECTCLUB, INC. SECURITIES LITIGATION

Appeal from the Chancery Court for Davidson County
No. 19-1169-IV            Russell T. Perkins, Chancellor
_____

### No. M2021-00469-COA-R3-CV
_____

In this action alleging violations of a federal securities law due to purported misrepresentations and omissions in an initial public stock offering, the plaintiffs sought to certify a class consisting of all persons who purchased common stock during the initial public offering. The trial court certified the class, determining that the requirements of Tennessee Rule of Civil Procedure 23 had been satisfied. The defendants have appealed. Although we dismiss the plaintiffs' claims under section 12 of the Securities Act of 1933, codified at 15 U.S.C. § 77l, due to lack of standing, we otherwise affirm the trial court's certification of the proposed class.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Steven A. Riley; Milton S. McGee, III; and Elizabeth O. Gonser, Nashville, Tennessee, and Scott D. Musoff, New York, New York, for the appellants, SmileDirectClub, Inc.; David Katzman; Kyle Wailes; Steven Katzman; Jordan Katzman; Alexander Fenkell; Susan Greenspon Rammelt; Richard Schnall; and Camelot Venture Group.

John S. Hicks and Christopher E. Thorsen, Nashville, Tennessee, and Sharon L. Nelles, Andrew J. Finn, and Shane M. Palmer, New York, New York, for the appellants, J.P. Morgan Securities LLC; Citigroup Global Markets Inc.; BofA Securities, Inc.; Jefferies LLC; UBS Securities LLC; Credit Suisse Securities (USA) LLC; Guggenheim Securities, LLC; Stifel, Nicolaus & Company, Incorporated; William Blair & Company, LLC; and Loop Capital Markets LLC.

Jerry E. Martin, David W. Garrison, and Seth M. Hyatt, Nashville, Tennessee, for the appellees, Brittany Vang and Matthew G. Mancour.

## OPINION

### I. Factual and Procedural Background

On December 20, 2019, the plaintiffs, Brittany Vang and Matthew Mancour[1] (collectively, "Plaintiffs"), filed a complaint in the Davidson County Chancery Court ("trial court") on behalf of "all purchasers of SmileDirectClub, Inc. . . . Class A common stock that was issued pursuant and/or traceable to the Company's Registration Statement and Prospectus . . . filed with the U.S. Securities and Exchange Commission . . . in connection with SmileDirectClub's September 12, 2019 initial public stock offering." Plaintiffs alleged that SmileDirectClub, Inc. ("SDC") had violated the disclosure requirements of the Securities Act of 1933, codified at 15 U.S.C. § 77a, *et seq*. ("Securities Act"), such that SDC and its officers, directors, underwriters, and managing members (collectively, "Defendants") were strictly liable for Plaintiffs' damages.[2] Plaintiffs specifically alleged violations of sections 11, 12(a)(2), and 15 of the Securities Act. *See* 15 U.S.C. §§ 77k, 77l, and 77o.

Plaintiffs pled, *inter alia*, that the initial public offering documents ("offering documents") contained materially untrue and misleading statements because they "falsely overstate[d] the caliber and scope of dental services [SDC] customers receive and omit[ted] critical material information about the Company's true business model." Plaintiffs asserted that the offering documents also "understate[d] regulatory and legislative risks in numerous states around the country," made "false and misleading

---

[1] The December 20, 2019 complaint listed Zachary Boorstein and Robert Boorstein as additional plaintiffs. However, by the time the motion for class certification was filed in October 2020, only Ms. Vang and Mr. Mancour were listed as plaintiffs.

[2] The Securities Act of 1933 further provides in pertinent part:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.

15 U.S.C. § 77v (emphasis added). The United States Supreme Court has made clear that subsection 77p does not "deprive state courts of their jurisdiction to decide class actions brought under the 1933 Act." *See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1069 (2018).

statements about customer satisfaction," and "failed to disclose ballooning costs that had occurred at the time of the [initial public offering]."

In their complaint, Plaintiffs claimed that a class action was necessary inasmuch as there were numerous potential class members who were damaged by their purchase of common stock during the initial public stock offering. Plaintiffs also claimed that these potential class members satisfied the requirements of maintaining a class action set forth in Tennessee Rule of Civil Procedure 23. Plaintiffs sought certification of the proposed class as well as, *inter alia*, an award of damages and injunctive relief. Plaintiffs further demanded a trial by jury. Although Defendants filed a motion seeking to dismiss the complaint for failure to state a claim upon which relief could be granted or to have the proceedings stayed pending the outcome in a parallel federal action, the trial court denied the motion on June 4, 2020.

On July 7, 2020, Defendants filed a motion seeking permission to file an interlocutory appeal of the trial court's June 4, 2020 order. Also on July 7, 2020, Defendants SDC, David Katzman, Kyle Wailes, Steven Katzman, Jordan Katzman, Alexander Fenkell, Susan Greenspon Rammelt, Richard Schnall, and Camelot Venture Group (collectively, "SDC Defendants"), filed an answer to the complaint. Defendants J.P. Morgan Securities LLC; Citigroup Global Markets Inc.; BofA Securities, Inc.; Jefferies LLC; UBS Securities LLC; Credit Suisse Securities (USA) LLC; Guggenheim Securities, LLC; Stifel, Nicolaus & Company, Incorporated; William Blair & Company, LLC; and Loop Capital Markets LLC (collectively, "Underwriter Defendants") filed a separate answer on the same day.

On July 22, 2020, the trial court entered an order concerning Defendants' motion for an interlocutory appeal, determining that although an interlocutory appeal was appropriate with respect to the trial court's denial of a stay, it was not appropriate regarding the court's denial of the motion to dismiss. The trial court therefore granted the motion in part and denied it in part. However, this Court subsequently denied permission for an interlocutory appeal on August 20, 2020.

On October 2, 2020, Plaintiffs filed a motion, pursuant to Tennessee Rule of Civil Procedure 23, seeking certification of the following class:

> [A]ll persons who purchased or acquired common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with [SDC's] September 12, 2019 initial public offering (the "Class"). Excluded from the Class are the Defendants themselves, any person, firm, trust, corporation, or entity related to or affiliated with the Defendants and any person employed by the Davidson County Chancery Court.

Plaintiffs averred that the proposed class satisfied all of the requirements of Rules 23.01 and 23.02.

Defendants filed a response opposing class certification, arguing, *inter alia*, that: (1) the proposed class representatives were not adequate, (2) the proposed class representatives' claims were not typical, (3) individual questions predominated over common issues, and (4) the proposed class definition was too broad. Plaintiffs and Defendants filed numerous documents, including affidavits, in support of their respective positions concerning class certification.

On April 28, 2021, the trial court entered an order granting Plaintiffs' motion for class certification, stating in pertinent part:

> Rule 23 of the Tennessee Rules of Civil Procedure governs class actions. In pertinent part, Rule 23 directs that a class may be certified for litigation of claims where:
>
> > (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.
>
> Tenn. R. Civ. P. 23.01. Once Plaintiffs have satisfied each of the four prerequisites of Rule 23.01, they must then establish that the proposed class action meets at least one of the three categories set forth in Rule 23.02. Here, Plaintiffs move for class certification under Rule 23.02(3), which provides:
>
> > An action may be maintainable as a class action if the prerequisites of 23.01 are satisfied, and in addition:
> >
> > * * *
> >
> > (3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning

the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02(3). Once these prerequisites are met, a Court may certify the suit as a class action without examining the underlying merits of the claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

\* \* \*

Plaintiffs assert that the Class here consists of all persons who purchased or acquired the 58.5 million shares of SmileDirect common stock pursuant or traceable to the IPO and the allegedly materially untrue or misleading Offering Documents. Although the exact number of Class members has yet to be determined, based on the millions of shares issued and their trading on the NASDAQ exchange, Class members likely number in the thousands and are geographically dispersed. Joinder of parties so numerous and widespread would be burdensome, expensive, and impracticable to both the parties and judicial system. Accordingly, Rule 23.01(1) is satisfied here. *See Grae v. Corrections Corp. of Am*., 330 F.R.D. 481, 501 (M.D. Tenn. 2019) ("Whatever the total number of plaintiffs, it is plain that they are too numerous for joinder to be practicable.").

\* \* \*

[T]he alleged misrepresentations in the Offering Documents relate to all investors and the existence and materiality of any misrepresentation presents a common issue. Stated differently, the falsity or misleading nature of Defendants' alleged statements are common questions. Moreover, the central issues in this case – whether the Offering Documents contain untrue or misleading statements; whether those statements are material; and whether, as a result of those statements, Defendants violated the Securities Act – as well as the common damages formula set forth in the Securities Act, involve questions of law or fact common to Plaintiffs and all Class members. Rule 23.01(2) is satisfied here.

\* \* \*

Loss causation is the "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Ohio Pub.*

- 5 -

*Emp. Ret. Sys. v. Federal Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016). A plaintiff does not need to prove loss causation at the class certification stage. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011). Loss causation "addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." *Id*. While "Plaintiffs must prove that portion of the price fall that they seek in damages is directly attributable to the misrepresentation, so that they do not recover a windfall, . . . they do not need to prove it at the certification stage." *Weiner v. Livity Health, Inc.*, No. 3:17-cv-01469, 2020 WL 467783, at *4 (M.D. Tenn. Jan. 29, 2020).

"Individual differences regarding the purchasing and selling of stock during the proposed class period [do] not destroy the typicality requirement." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 456 (S.D. Ohio 2009). "All purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated." *Id*.

\* \* \*

For purposes of class certification, the common question of whether the Offering Documents were materially misleading predominates over any secondary tracing issues that might be encountered later in the litigation. The typicality requirement of Rule 23.01 is met here.

\* \* \*

Here, Plaintiffs' interests are aligned with those of the Class. Plaintiffs purchased SmileDirect stock pursuant or traceable to the Offering Documents that allegedly contained materially untrue and misleading statements; thus, all members of the proposed class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiffs' claims. Furthermore, there are no ascertainable conflicts between Plaintiffs and the Class. Plaintiffs have demonstrated their commitment to pursue this action and to maximizing a recovery on behalf of all Class members. Lastly, Plaintiffs' counsel are highly qualified, widely experienced in securities class actions, and competent to conduct the proposed litigation. The adequacy requirement of Rule 23.01 is satisfied here.

\* \* \*

In addition to meeting the requirements of Rule 23.01, a class must satisfy one of the categories of Rule 23.02. Here, Plaintiffs move for class certification under Rule 23.02(3). To satisfy the requirements of Rule 23.02(3), Plaintiffs must prove that common questions predominate and that a class action is a superior way to resolve the controversy.

\* \* \*

The crux of Plaintiffs' claim is that the Offering Documents contained misstatements and/or omissions of material fact. This issue will predomina[te] over any secondary issues. Moreover, proof of Defendants' alleged misrepresentations and/or omissions are susceptible to generalized proof. *See Cosby* [*v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP], 2020 WL 3548370, at \*33-34 [(E.D. Tenn. June 29, 2020)]. "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat" predominance or class certification. *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015); *see also Gaynor* [*v. Miller*, No. 3:15-CV-232-TAV-DCP], 2018 WL 3751606, at \*18 [(E.D. Tenn. Aug. 6, 2018)] ("Because the statutory formula applies, the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and fact remains."). The common questions of law and fact here predominate over any questions affecting only individual members. The predominance requirement is satisfied here. *See Gaynor*, 2018 WL 3751606, at \*14.

\* \* \*

The Court has considered counsels' arguments and agrees with Plaintiffs that a class action is the superior method of adjudication. As explained above, Plaintiffs assert that 58.5 million shares of SmileDirect common stock pursuant or traceable to the IPO and the allegedly materially untrue or misleading Offering Documents were purchased. The vast amount of shares, the geographical diversity of the Class members, and the predominant issues in this case warrant a finding that a class action is the superior method of adjudication. Further, the Court does not foresee any management difficulties in maintaining the class action. Accordingly, the Court determines that Plaintiffs have established that a class action is the superior method to adjudicate this case.

Defendants timely appealed the trial court's order certifying the class. On May 13, 2021, the trial court entered an order staying the proceedings pending resolution of this appeal concerning the class certification ruling.

## II. Issues Presented

Defendants present the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that the claims of the proposed class representatives are typical pursuant to the requirements of Tennessee Rule of Civil Procedure 23.01(3).

2. Whether the trial court erred by determining that the proposed class representatives can adequately represent the interests of the class pursuant to the requirements of Tennessee Rule of Civil Procedure 23.01(4).

3. Whether the trial court erred by determining that issues common to the class predominate over individual issues pursuant to the requirements of Tennessee Rule of Civil Procedure 23.02(3).

4. Whether the trial court erred by certifying a class with no temporal limitation, thereby purportedly including members who have no actionable injury given the timing of their trades.

## III. Standard of Review

Tennessee Code Annotated § 27-1-125 (2017) vests this Court with the authority to "hear appeals from orders of trial courts granting or denying class certification" under Tennessee Rule of Civil Procedure 23. Concerning the standard of review for class action certifications, this Court has previously elucidated:

> A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85

(Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

A trial court's discretion is not unbounded. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb,* 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308 (Tenn. 2008) (citation omitted). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Id.* at 525 (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)). We review the trial court's factual conclusions under the preponderance of the evidence standard. *Id.* (citations omitted).

* * *

Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification. *Walker*, 249 S.W.3d at 307 (citing *Hamilton v. Gibson Cnty. Util. Dist.*, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992)). The burden is on the proponent of class certification to demonstrate that a class action is appropriate. *Id.* This burden is two-fold. The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01. *Id.* at 307-08 (citing Tenn. R. Civ. P. 23.01). Rule 23.01 permits class certification if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Tenn. R. Civ. P. 23.01. The proponent of class certification must demonstrate compliance with each of Rule 23.01's requirements. *Walker*, 249 S.W.3d at 307-08.

The proponent must next establish the class action is maintainable under Rule 23.02. *Id.* at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. *Id.* Rule 23.02 provides three bases for class action certification:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or

- 10 -

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02. Class certification is permissible only if the proponent demonstrates compliance with both Rule 23.01 and Rule 23.02. *Freeman*, 229 S.W.3d at 702 (citing *Hamilton*, 845 S.W.2d at 225).

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3-5 (Tenn. Ct. App. Feb. 23, 2011).

*Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 537-39 (Tenn. Ct. App. 2017).

Furthermore, this Court has explained that it is necessary to conduct a "rigorous analysis" when reviewing a class certification, stating:

The trial court has the responsibility to conduct its own inquiry into whether the requirements of Rule 23 have been met. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). In this case, that means an evaluation of whether common questions of law or fact predominate over individual questions and whether class action provides the superior method of resolving the claims.

- 11 -

The extent and components of a thorough or rigorous analysis necessary for a class certification decision depend upon the claims and defenses presented, the type of class certification requested, the issues raised regarding the compliance with the rule's requirements, the members of the purported class, and other questions presented by the particular case and the requirements of Rule 23. The trial court must "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d [734,] 744 [(5th Cir. 1996)]; *see also Carroll v. Cellco Partnership*, 313 N.J. Super. 488, 713 A.2d 509, 512 (1998).

\* \* \*

Where the trial court fails to look beyond the pleadings and conduct a rigorous analysis of the issues, the case must be remanded to permit the trial court to make that analysis and to make the findings required by Rule 23. *Geriarty v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004) (the trial court indicated it was relying on plaintiff's assertions regarding the factual issue of the efficiency of the market which triggered the presumption of reliance).

*Wofford*, 528 S.W.3d at 539-40 (quoting *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at \*22 (Tenn. Ct. App. June 29, 2007).

## IV. Typicality

Defendants argue that the trial court erred by determining that the claims of Plaintiffs as proposed class representatives were typical of the proposed class's claims, pursuant to the requirements of Tennessee Rule of Civil Procedure 23.01(3), because Plaintiffs' claims were subject to unique causation and standing defenses that might not apply to other class members. Specifically, Defendants contend that Plaintiffs were "in-and-out traders" who purchased their SDC shares from third-party websites rather than purchasing directly from Defendants and who sold their shares before all of the alleged misrepresentations in the offering documents were revealed. We will address Defendants' causation and standing issues in turn.

### A. Causation

Defendants advance the argument that claims filed pursuant to sections 11 and 12 of the Securities Act require a showing of a "causal connection between the alleged misstatement or omission [in the offering documents] and a diminution in the security's value—i.e., that the revelation of the prior misstatement or omission caused the value of the security to drop," an element known as "loss causation." *See, e.g., In re Smart*

*Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 59 (S.D.N.Y. 2013); *see also Lentell v. Merrill Lynch & Co., Inc*., 396 F.3d 161, 172 (2d Cir. 2005).[3] The federal courts have made clear, however, that plaintiffs asserting claims pursuant to sections 11 and 12(a)(2) do not need to allege or prove "loss causation." *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010); *see also Obasi Inv. LTD v. Tibet Pharm., Inc*, 931 F.3d 179, 182 (3d Cir. 2019); *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc*., 583 F.3d 935, 947 (6th Cir. 2009). Rather, "in order to make out prima facie violations of sections 11 and 12(a)(2), plaintiffs must allege that an omitted material fact was required to be included [in the offering documents] by the securities laws or that its absence rendered statements in the prospectus misleading." *In re Adams Golf, Inc. Sec. Litig*., 381 F.3d 267, 277 (3d Cir. 2004). "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 445 (1976); *see Green v. Green*, 293 S.W.3d 493, 511 (Tenn. 2009). As the United States Supreme Court has explained, the "basic purpose of the [Securities Act]" is to "provide greater protection to purchasers of registered securities." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383 (1983).

As Defendants correctly point out, however, the liability provided for in the Securities Act is subject to an affirmative "negative loss causation" defense, for which a defendant bears the burden of proof. *See* 15 U.S.C. §§ 77k(e), 77l(b); *see also Fed. Hous. Fin. Agency for Fed. Nat'l Mort. Ass'n v. Nomura Holding Am., Inc.,* 873 F.3d 85, 153 (2d Cir. 2017) (explaining that with regard to a section 12(b) claim "loss causation is an affirmative defense to be proven by defendants, not a *prima facie* element to be proven by plaintiffs."); *Greenapple v. Detroit Edison Co*., 618 F.2d 198, 204 (2d Cir. 1980) (explaining that pursuant to section 11, "while plaintiff need show no causal connection between the decline in the price of the security and the materially false misstatement or omission, the defendant may escape liability in whole or in part if he can prove that the decline in market value is unrelated to the material misstatements or omissions."). Defendants posit that inasmuch as Plaintiffs did not maintain ownership of their stock when certain alleged omissions or misrepresentations were revealed to the market, they will be subject to a negative loss causation defense that may not affect other class members' claims.

Rule 23.01(3) provides in relevant part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . the claims or

---

[3] "[W]hen a federal cause of action . . . is brought in state court, federal law governs substantive issues while state law governs procedural matters." *Blackburn v. CSX Transp., Inc*., No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *7 (Tenn. Ct. App. May 30, 2008). Moreover, our Supreme Court has previously instructed with regard to class actions that "because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996) (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553 (Tenn. 1990)).

defenses of the representative parties are typical of the claims or defenses of the class." As this Court has previously explained with regard to typicality:

"[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Freeman* [*v. Blue Ridge Paper Prod., Inc.*,] 229 S.W.3d [694,] 703 [(Tenn. Ct. App. 2007)] (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alteration in original) (citation omitted) (internal quotation marks omitted). The typicality inquiry focuses on whether the legal and remedial theories of the class representatives are sufficiently similar to those of the unnamed class members. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (citing *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).

"A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)). "The typicality requirement reflects the belief that a class action's progress should not be compromised by a diversion of attention from the substance of the basic claim involved in the case." *Bayberry Assocs. v. Jones*, 87-261-II, 1988 WL 137181, at *9 (Tenn. Ct. App. Nov. 9, 1988) (citation omitted), *vacated for lack of a final judgment,* 783 S.W.2d 553 (Tenn. 1990). "Its purpose, therefore, is to screen out class actions in which the legal or factual position of the representative party is markedly different from that of the other members of the class, even though common issues of law or fact may also be present." *Id.* (citations omitted).

The claims or defenses of a class representative are atypical if a defense unique to that person or a small subclass is likely to become a major focus of the litigation. *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974) (citation omitted); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599-601 (3d Cir. 2009); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (citations omitted); *Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 663-64 (D. Or. 1991) (citations omitted). Regardless of whether courts frame this issue in terms of typicality or adequacy of representation, the danger is that a class representative will not properly advance the interests of the absent class

members if overly concerned with defenses or affirmative defenses unique to him. *Gary Plastic*, 903 F.2d at 180 (citations omitted); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *6 (Tenn. Ct. App. Feb. 23, 2011) (footnotes omitted).

Plaintiffs maintain that the typicality requirement has been met herein because their claims are "identical to the claims of all other Class members" in that Plaintiffs and other class members "purchased [SDC] common stock pursuant or traceable to the Offering Documents, they all allege that the Offering Documents failed to disclose the same material facts, and all bring the same claims against the same Defendants as a result." Plaintiffs further argue that each claim "turns upon the very same facts and legal theories, and will be proven by the same evidence." By contrast, Defendants posit that the affirmative negative loss causation defense purportedly applicable to Plaintiffs' claims will likely become a major focus of the litigation.

The trial court determined that Plaintiffs' claims were typical of class members' claims. In doing so, the court relied upon *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996), wherein the United States Sixth Circuit Court of Appeals explained that a plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quoting 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3.13, at 3-76 (3d ed. 1992)). The Sixth Circuit Court further explained that a "necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* With regard to Defendants' argument concerning Plaintiffs' purported causation issues, the trial court herein stated that "[i]ndividual differences regarding the purchasing and selling of stock during the proposed class period [do] not destroy the typicality requirement," and "[a]ll purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated," citing *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 456 (S.D. Ohio 2009). We agree with the trial court's conclusion.

Federal courts have recognized that "[t]ypicality generally presents a low burden that is easily satisfied." *See In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 627 (N.D. Ala. 2009); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The typicality requirement essentially requires that "other members of the class . .

. have the same or similar grievances as the plaintiff." *Alpern*, 84 F.3d at 1540. As the United States Eighth Circuit Court of Appeals further has explained:

> The [typicality] burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer* [*v. Mellon Mortg. Co.*], 64 F.3d [1171,] 1174 [(8th Cir. 1995)]. Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.

*Id.* *See Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379, at *31 (E.D. Tenn. June 29, 2020), *report and recommendation adopted*, No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114 (E.D. Tenn. May 7, 2021) (finding that the proposed class representative's Securities Act claims were "typical because they arise out of the same event that gives rise to the claims of other class members—that is, Defendant's alleged misstatements and omissions."); *see also In re Marsh & McLennan Co., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) ("Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct.").

Although Defendants attempt to characterize Plaintiffs as "in-and-out traders" who could potentially be subject to negative loss causation defenses that other class members may not face, the trial court did not appear to credit this characterization.[4] Even assuming, *arguendo*, that Plaintiffs could properly be characterized as "in-and-out traders," there is no bright line rule providing that in-and-out traders' claims are automatically atypical. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 86 n.5 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("[C]ourts have consistently found that [status as an in-and-out trader] does not render a representative's claim atypical."). *See also In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005) ("Defendants have not cited and the court has not found any case that has relied on the negative causation defense to limit a putative class at the class certification stage of litigation."). In addition, the possibility of individualized issues with certain affirmative defenses, even a statute of limitations defense, is usually insufficient to prevent class certification. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000); *see also Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (explaining that "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though

---

[4] According to Defendants, Mr. Mancour maintained ownership of his stock in SDC for only one day while Ms. Vang owned her stock for approximately six weeks.

individual issues were present in one or more affirmative defenses"); *In re Tyco Int'l, Ltd*., 236 F.R.D. 62, 71 (D.N.H. 2006) (explaining that "classes are routinely certified where common issues predominate even though individual issues exist with respect to other matters such as affirmative defenses or damages").

Defendants rely on *In re Smart Techs., Inc. S'holder Litig*., 295 F.R.D. at 59-60, as support for their position that in-and-out traders' claims are atypical when compared to the claims of regular purchasers within the class. However, in *In re Smart Techs., Inc. S'holder Litig*., the plaintiffs had alleged that any loss sustained in selling their shares was attributable <u>solely</u> to a disclosure that occurred on November 9, 2010. *See id*. As such, the court excluded in-and-out traders who sold their shares prior to the November 9, 2010 disclosure as atypical because they would be subject to a negative loss causation defense. *See id*. By contrast, in this matter, Plaintiffs alleged in their complaint that the stock price fell 27.5 percent on the first day of trading as "adverse facts then-known by Defendants, but concealed from the market, seeped out."[5] Plaintiffs further alleged that the stock price continued to decline over the ensuing weeks as further negative disclosures occurred, including, *inter alia*, the filing of a federal lawsuit against SDC, adoption of strict regulatory legislation in California, and reporting of corporate financial losses. As such, this case clearly presents a different factual scenario than that presented in *In re Smart Techs., Inc. S'holder Litig*.

We find the case of *In re Constar Int'l Inc. Sec. Litig*., 585 F.3d 774, 778 (3d Cir. 2009), to be more factually similar and therefore instructive to the case at bar. In *In re Constar Int'l Inc. Sec. Litig*., the plaintiffs alleged that the defendant corporation's initial public offering documents contained materially misleading statements and omitted required information. *Id*. The plaintiffs asserted that in the months to follow, damaging financial disclosures and press releases caused the stock price to fall by more than fifty percent. *Id*. The plaintiffs filed a federal lawsuit pursuant to the Securities Act and sought to certify a class of stock purchasers. *Id*. at 779. The federal district court certified the class, finding that the requirements of Federal Rule of Civil Procedure 23 had been met. *Id*.

On appeal to the United States Third Circuit Court of Appeals, the *Constar* defendants argued that certification of the class of plaintiffs was in error. In analyzing the various arguments presented by the defendants concerning class certification, the Third Circuit Court stated:

> A *prima facie* case under § 11 is straightforward, requiring only a showing
> of a material misrepresentation or omission from a defendant's registration

---

[5] One exhibit that Plaintiffs presented to the trial court was an article pointing out risks and concerns with SDC's initial public offering. The article was published on September 11, 2019, the day before the offering took place.

statement. That is, § 11 imposes liability "if a registration statement, as of its effective date: (1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statements therein not misleading." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 269 (3d Cir. 2006) (internal quotation marks omitted).

\* \* \*

In a § 11 case, plaintiffs do not have the burden of proving causation, although defendants "may assert, as an affirmative defense, that a lower share value did not result from any nondisclosure or false statement." *In re Adams Golf Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004). Similarly, plaintiffs do not need to establish reliance on an issuer's statements, unless they purchased the stock more than "twelve months . . . after the effective date of the registration statement." 15 U.S.C. § 77k(a). Under § 11(e), the measure of damages is set as the difference between the price paid for a security purchased pursuant to the registration statement, and the price at the time suit was filed or the security was sold. 15 U.S.C. § 77k(e). "[A]ny decline in value is presumed to be caused by the misrepresentation in the registration statement . . . ." *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995). Thus, the elements of a § 11 claim "stand in stark contrast" to those of a claim under the Exchange Act (such as a § 10(b) claim), which requires "a showing of reasonable reliance and scienter." *Adams Golf*, 381 F.3d at 273 n.5.

\* \* \*

As the District Court noted, because reliance is not an element under § 11, "the conduct of the defendants, not the knowledge of the plaintiffs, is determinative" of materiality. (Joint App. 28.) The crucial questions are: "[W]as there a misrepresentation? And, if so, was it objectively material?" (Joint App. 29.) Since reliance is irrelevant in a § 11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge (except where more than twelve months have passed since the registration statement became effective). Further, because a misrepresentation is material if a reasonable investor would have considered a fact important, the effect of a material misrepresentation is felt uniformly across the class of investors, regardless of whether the market is efficient.

\* \* \*

Defendants also maintain that plaintiffs have failed to prove that loss causation and injury were common issues that would predominate, and urge that the District Court erred by holding otherwise. They analogize their case to *Newton* [*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), as amended (Oct. 16, 2001)], where, "[b]ecause plaintiffs' claims . . . require[d] an economic injury determination for each trade," the class failed "to satisfy the predominance requirement." 259 F.3d at 190. Again, defendants' argument might be persuasive if this were a § 10(b) case. Section 11 does not require a showing of individualized loss causation, because injury and loss are presumed under § 11. It bears repeating that, in a § 11 case, plaintiffs do not bear the burden of proving causation, damages are calculated as the difference between the purchase price of a security and the price at the time suit was filed or the security was sold, and any decline in value is presumed to be caused by the misrepresentation.

We also note that, although loss causation is an affirmative defense in a § 11 case, this defense would not defeat predominance here. Section 11(e) allows defendants to "limit damages by showing that plaintiffs' losses were caused by something other than their misrepresentations." [*In re*] *Merck* [*& Co. Sec. Litig.*], 432 F.3d [261,] 274 [(3d Cir. 2005)]. Any affirmative defense on this ground would present a common issue—not an individual one. If something other than the alleged misrepresentations produced a drop in stock price, be it the weather, market conditions, or any other factor, class members would be affected uniformly. If, for example, Investors X, Y, and Z all purchase Security A, and Security A's price happens to fall dramatically in the ensuing months, the cause of that decline would not differ as to each investor.

*Id*. at 782-85 (other internal citations and footnotes omitted).

Although we recognize Defendants' postulate that the timing of the sales of various class members' stock might affect what Defendants are required to prove with regard to the affirmative defense of negative loss causation, we agree with the trial court's determination that this argument would not defeat typicality. Defendants bear the burden of proving the affirmative defense, and if they choose to try and present varying factual situations to show other purported reasons for the decline in stock value based on when class members sold their stock, that will be their responsibility. However, Plaintiffs have alleged that material misrepresentations or omissions in the offering documents caused the price of the stock to be artificially inflated, which is sufficient to state a *prima facie* claim under the Securities Act, and they have alleged that these misrepresentations or omissions affected the entire class. We conclude that the possibility of Defendants' raising individualized negative loss causation defense arguments does not lead to the

supposition that the proposed class representatives will not properly advance the interests of the other class members or that those defenses are likely to become a major focus of the litigation. *See Roberts*, 2011 WL 662648, at \*6. We therefore determine Defendants' causation arguments to be unavailing.

## B. Standing

Defendants also point out that in order to have standing to bring a claim pursuant to section 12(a)(2), a plaintiff "must have purchased securities directly from the defendants." *See Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013); *see also In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, No. 2:13-CV-02654-SHM-DKV, 2014 WL 12611247, at \*8 (W.D. Tenn. Aug. 4, 2014) ("[P]urchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2).") (quoting *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 244-45 (E.D.N.Y. 2002)). Defendants contend that although other class members may have standing to bring a claim pursuant to section 12(a)(2), Plaintiffs have no such standing because they did not purchase their shares directly from Defendants. In their appellate brief, Plaintiffs appear to concede that they lack standing pursuant to section 12(a)(2). However, Plaintiffs posit that (1) they can represent class members with section 12(a)(2) claims even if Plaintiffs only have section 11 claims and (2) Defendants' argument is best addressed in a dispositive motion rather than at the class certification stage.

Concerning this issue, the trial court stated in pertinent part:

Defendants also argue that because neither Mr. Mancour nor Ms. Vang bought their shares directly from any Defendant in the IPO, both Mr. Mancour and Ms. Vang are subject to standing challenges to bring a Section 12(a)(2) claim, which also renders them atypical of the purported Class. "In order to have standing under § 12(a)(2), . . . plaintiffs must have purchased securities directly from the defendants." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013). "[C]laims under Section 12(a)(2) may [not] be brought by those who . . . purchased securities in a 'secondary market.'" *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16-17 (2d Cir. 2009) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995)). However, "[a] single class can contain plaintiffs who have section 11 claims and section 12(a)(2) claims where the same course of conduct gives rise to liability under both sections." *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 166 (S.D.N.Y. 2011). Thus, Mr. Mancour and Ms. Vang can represent class members with Section 12(a)(2) claims even if they only have Section 11 claims. *See id.* (permitting named Plaintiff to represent class members with Section

12(a)(2) claims despite the fact that it only has Section 11 claims and did not purchase from an underwriter).

The Court finds that Defendants' standing argument does not defeat class certification. For purposes of class certification, the common question of whether the Offering Documents were materially misleading predominates over any secondary tracing issues that might be encountered later in the litigation. The typicality requirement of Rule 23.01 is met here.

Based upon our review of the applicable case law, we find the trial court's reliance on *New Jersey Carpenters Health Fund* misplaced. *See* 272 F.R.D. 160, 166 (S.D.N.Y. 2011). In *New Jersey Carpenters Health Fund*, the District Court for the Southern District of New York was asked to determine whether one of the plaintiffs and proposed class representatives, Boilermaker and Blacksmith National Pension Trust ("Boilermaker"), lacked standing to bring claims under section 12(a)(2) of the Securities Act inasmuch as Boilermaker had purchased its securities "on the aftermarket, and not at the initial public offering." *See id.* In response to that issue, the district court stated in pertinent part:

A single class can contain plaintiffs who have section 11 claims and section 12(a)(2) claims where the same course of conduct gives rise to liability under both sections. Thus, Boilermaker can represent class members with section 12(a)(2) claims despite the fact that it only has section 11 claims, and Defendants' argument to the contrary has been rejected by this Circuit and this District. *See, e.g.*, *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318(HB), 2000 WL 1357509, at *3, 2000 U.S. Dist. LEXIS 13469, at *13-14 (S.D.N.Y. Sep. 19, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.").

*Id*. We note, however, that Boilermaker was neither the sole plaintiff nor the sole proposed class representative in that case. *Id*. at 162. In other words, other plaintiffs and proposed class representatives in the action did maintain standing to assert claims under section 12(a)(2) of the Securities Act. *See id*.

In a subsequent decision, *Stadnick v. Vivint Solar, Inc.*, Fed. Sec. L. Rep. P 98874 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017), the District Court for the Southern District of New York was asked to determine whether the sole named plaintiff and proposed class representative could maintain claims under section 12(a)(2) on behalf of other class members when the plaintiff lacked standing to bring such claims on his own behalf. The *Stadnick* plaintiff argued that "the similarity between [his] claims under

§ 11 and claims under § 12(a)(2) is enough." *Id*. at *18. The *Stadnick* court disagreed and dismissed the plaintiff's claims. *Id*.

Similarly, in the later case of *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510 (S.D.N.Y. 2018), the same court was again asked to determine whether the lead and only named plaintiff and proposed class representative could maintain claims under section 12(a)(2) on behalf of other class members when the plaintiff lacked standing to bring such claims on his own behalf. The plaintiff relied on *New Jersey Carpenters Health Fund*, 272 F.R.D. at 166, for its argument that "because the 'same course of conduct gives rise to liability under both [S]ections [11 and 12(a)(2)],' Lead Plaintiff 'can represent class members with [S]ection 12(a)(2) claims despite the fact that it has only Section 11 claims.'" *See id*. at 520. The *Yi Xiang* court, quoting *Stadnick*, disagreed, determining that the class could be certified but that the section 12(a)(2) claims would be dismissed based on the lead plaintiff's lack of standing to maintain such claims. *See id*. at 521, 532.

The approach taken in the *Stadnick* and *Yi Xiang* opinions has been utilized by other federal courts as well. *See, e.g.*, *In re Merix Corp. Sec. Litig.*, No. CV 04-826-MO, 2009 WL 10692857, at *4 (D. Or. Nov. 5, 2009) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.")); *see also Ong ex rel. Ong IRA v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891 (N.D. Ill. 2004) (explaining that the "fact that [proposed class representatives] have filed a class action lawsuit that includes putative class members who did purchase the relevant securities does not confer the necessary standing" when proposed class representatives "never purchased any securities in those offerings"); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 976 (W.D. Wis. 2003).

Furthermore, this approach is in accord with case law concerning standing of class representatives in general. For example, in *Wofford*, 528 S.W.3d at 542, this Court explained:

> At least one named class representative must have standing for a class action to proceed. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id*. (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)).

For the foregoing reasons, we determine that the trial court erred by "applying an incorrect legal standard" when analyzing the standing sub-issue. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Insofar as the proposed class

representatives failed to demonstrate that they had standing to assert a claim based upon section 12(a)(2) on their own behalf, they were unable to bring a class action asserting such a claim on behalf of other class members. Accordingly, the section 12(a)(2) claims must be dismissed. We otherwise conclude that the trial court did not abuse its discretion in determining that the typicality requirement had been met.

## V. Adequacy of Representation

Defendants argue that Plaintiffs are inadequate class representatives because their testimony in discovery demonstrated that they were unable to "explain basic information" about the case, contradicted the allegations of the complaint, and had "abdicated complete control" to their attorneys. According to Defendants, Ms. Vang admitted in her deposition that she had never read the offering documents while Mr. Mancour disavowed the complaint's theories concerning how the offering documents were misleading. Defendants posit that the litigation is lawyer driven and that Plaintiffs admitted to having been solicited by attorneys to serve as class representatives and having no meaningful involvement in the decision-making process.

The trial court stated as follows with respect to the adequacy of representation issue:

"The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and internal quotations omitted). The Court looks to two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted). The Court also "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

The purpose of the requirement that class representatives fairly and adequately protect the interests of the class is to protect the legal rights of absent class members. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). Because all members of a class are bound by the *res judicata* effect of the judgment, a principal factor in determining the appropriateness of class certification is "the forthrightness and vigor with which the representative party can be expected to assert and defend the

interests of the members of the class." *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 470 (S.D.N.Y. 1968). Class representatives are inadequate if their "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728.

Defendants argue that Ms. Vang's and Mr. Mancour's deposition testimony demonstrates that they lack basic knowledge about the issues and have no meaningful control over the litigation. However,

> Plaintiffs, as laypersons, cannot be reasonably expected to understand the deeper legal intricacies of this matter. But they plainly understand that they are suing because the Offering Documents allegedly contained misrepresented or omitted material information. They also plainly intend to see Defendants' alleged wrongs righted and have already expended considerable time and energy in services of that end. Rule 23 requires no more.

*Stein v. U.S. Xpress Enters., Inc.*, No. I :19-cv-98, Mem. Op., Dkt. 134 at 15 (E.D. Tenn. Feb. 21, 2020); *see also In re Sadia, S.A. Secs. Litig.*, 269 F.R.D. 298, 310 (S.D.N.Y. 2010) ("[W]hile neither [class] representative . . . demonstrated a deep understanding of [the] litigation," the representatives had "the requisite basic awareness of the facts of the case and a willingness to satisfy [their] obligations to absent Class members"); *Morris v. Wachovia Secs., Inc.*, 223 F.R.D. 284, 296 (E.D. Va. 2004) ("In a complex lawsuit . . . the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.").

Here, Plaintiffs' interests are aligned with those of the Class. Plaintiffs purchased SmileDirect stock pursuant or traceable to the Offering Documents that allegedly contained materially untrue and misleading statements; thus, all members of the proposed class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiffs' claims. Furthermore, there are no ascertainable conflicts between Plaintiffs and the Class. Plaintiffs have demonstrated their commitment to pursue this action and to maximizing a recovery on behalf of all Class members. Lastly, Plaintiffs' counsel are highly qualified, widely experienced in securities class actions, and competent to conduct the proposed litigation. The adequacy requirement of Rule 23.01 is satisfied here.

Following our review of this issue, we agree with the trial court's conclusion.

Rule 23.01 provides in relevant part that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (4) the representative parties will fairly and adequately protect the interest of the class." Concerning Rule 23.01(4), this Court has previously elucidated that the proposed class representatives "must have common interests with the unnamed class members and it must appear that the class representatives will vigorously prosecute the case and protect the interests of the class through qualified counsel.'" *Rogers v. Adventure House LLC*, 617 S.W.3d 542, 567 (Tenn. Ct. App. 2020), *perm. app. denied* (Tenn. Dec. 3, 2020) (quoting *Highlands Physicians, Inc. v. Wellmont Health Sys.*, No. E2017-01549-COA-R3-CV, 2017 WL 6623992, at *7 (Tenn. Ct. App. Dec. 28, 2017)). Similarly, the United States Sixth Circuit Court of Appeals has explained:

> In order to understand the nature of the adequate representation requirement, the Supreme Court's recent construction of Federal Rule of Civil Procedure 23(a)(4) offers assistance. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, [625, 626], 117 S.Ct. 2231, 2250-51, 138 L.Ed.2d 689 (1997) (quotation omitted) (citations omitted). Accordingly, to satisfy the adequate representation requirements under Rule 23 and thereby under § 108, there must be an absence of a conflict of interest, and the presence of common interests and injury.
>
> There are similarities in some of the concerns addressed by prerequisites 23(a)(2) (commonality), 23(a)(3) (typicality), and 23(a)(4) (representation). As the Supreme Court explained in *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982):
>
>> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Id.* at 157 n.13, 102 S.Ct. at 2370-71 n.13. *Cf.* HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.22, at 3-126 (3d ed. 1992) ("[T]he two factors that are now predominately recognized as the basic guidelines for the Rule 23(a)(4) prerequisite are (1) absence of conflict and (2) assurance of vigorous prosecution."); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent."). For purposes of this case, the key determinants underlying the adequacy of representation relate to the issues of conflicts of interest, common interest, and common injury.

*Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998). *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (stating that there are "two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel'" (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

In the case at bar, Plaintiffs alleged that they purchased SDC common stock pursuant or traceable to the offering documents, as did the other class members. In addition, Plaintiffs and the other class members will need to prove that the offering documents misrepresented or failed to disclose material facts. As such, it is clear that Plaintiffs and the other class members have common interests and that there is no conflict in their interests.

Moreover, Ms. Vang testified that she received periodic updates from her attorneys concerning the case, that she had reviewed drafts of the complaint before it was filed, and that she was "representing the whole class" as a lead plaintiff. Ms. Vang further testified: "I am going to do . . . my part in hiring lawyers and keeping up with communication and doing litigation like this, for the whole class." Ms. Vang demonstrated awareness of her claims and where the litigation stood procedurally. Similarly, Mr. Mancour was familiar with his claims and testified regarding his communications with the attorneys concerning the case. When questioned regarding his responsibilities as class representative, Mr. Mancour stated:

> So my responsibilities as a fiduciary are to fairly represent this class, see that they receive adequate representation. I would do that by simply staying engaged with communication, any sort of developments in this litigation, and diligently ascertaining the developments, and again doing so with my counsel.

Here, Plaintiffs have clearly testified that they understand their responsibilities as class representatives and that they will do their part to represent the class in this litigation. Plaintiffs have communicated with their counsel, reviewed filings, and shown familiarity with the proceedings. As the trial court found, Plaintiffs are not required to "demonstrate[] a deep understanding of th[e] litigation," but rather a "basic awareness of the facts of the case and a willingness to satisfy [their] obligations to absent Class members." *See In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 310 (S.D.N.Y. 2010). Despite Defendants' contention to the contrary, we agree with the trial court that Plaintiffs have demonstrated that they will adequately represent the interests of the class in this matter.

Finally, although Defendants do not appear to argue that class counsel is unqualified to represent the class, they do assert that Plaintiffs "did not 'select' their counsel in any meaningful sense, which renders them inadequate to serve as class representatives." However, we reiterate that in order to comply with the requirement of "fairly and adequately protect[ing] the interest of the class" contained in Rule 23.01(4), the proposed class representatives "must have common interests with the unnamed class members and it must appear that the class representatives will vigorously prosecute the case and protect the interests of the class <u>through qualified counsel</u>.'" *See Rogers*, 617 S.W.3d at 567 (emphasis added); *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Inasmuch as Defendants have not questioned class counsel's qualifications, and we agree with the trial court's determination that class counsel are "highly qualified" to conduct this litigation, we find Defendants' argument to be unavailing.

## VI. Predominance of Common Questions

Defendants further advance that individual questions concerning each class member's knowledge will predominate over common issues in this matter, thus rendering class certification unworkable under Rule 23.02(3). Following satisfaction of the requirements of Tennessee Rule of Civil Procedure 23.01, "the proponent of class certification must establish that the class action is maintainable under Rule 23.02." *See Emergency Med. Care Facilities P.C. v. BlueCross BlueShield of Tenn. Inc.*, No. W2017-02211-COA-R3-CV, 2018 WL 6266529, at *4 (Tenn. Ct. App. Nov. 29, 2018); *see also Wofford*, 528 S.W.3d at 539. Rule 23.02(3) requires, for the class to be certified, that "question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Rule 23.02(3) also provides:

The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the

controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

As this Court has previously explained: "The determination of [predominance] necessarily depends on whether the class members will require individualized hearings to prove the elements for each cause of action." *Freeman v. Blue Ridge Paper Prods., Inc.*, 229 S.W.3d 694, 704-05 (Tenn. Ct. App. 2007) (quoting *Crouch v. Bridge Terminal Transp., Inc.*, No. M2001-00789-COA-R3-CV, 2002 WL 772998, at *4 (Tenn. Ct. App. Apr. 30, 2002)).

This Court has further elucidated with regard to predominance and Rule 23.02(3):

> The predominance requirement means simply that common issues should predominate over, and be unencumbered by, any individual claims or issues involved in the action. Common questions of fact and law predominate if they have "a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Klay v. Humana*, 382 F.3d 1241, 1255 (11th Cir. 2004), quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001). An issue of law or fact should be considered common "only to the extent its resolution will advance the litigation of the case." *Philip Morris Inc. v. Angeletti*, 752 A.2d [200,] 226 [(Md. Ct. App. 2000)], relying on *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 542 (W.D. Wis. 1998). The predominance inquiry, therefore, must include consideration of each element of the cause of action asserted and the facts necessary to prove each.

> A claim will satisfy the predominance requirement only "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 338 (D. Minn. 1999). Consequently, courts should not certify common question classes if most or all of the class members' claims depend on the resolution of individual questions of fact. With regard to questions of fact, an issue is common to the class when it is susceptible to generalized, classwide proof.

> * * *

> In order to determine whether common questions predominate, a court must examine the cause of action asserted on behalf of the proposed class. After identifying the relevant legal and factual questions, the

predominance inquiry requires a determination that common issues of law or fact exist and, then, a determination that such common issues predominate. That inquiry must focus on the relationship between common and individual issues.

*Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *14-15, 17 (Tenn. Ct. App. June 29, 2007) (other internal citations omitted).

In this matter, the underlying claims require demonstration that "an omitted material fact was required to be included [in the offering documents] by the securities laws or that its absence rendered statements in the prospectus misleading." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 277. As the trial court correctly noted in its order:

> Under those strict liability statutes [sections 11, 12, and 15 of the Securities Act], "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish [a] *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). "[P]laintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter, reliance, or loss causation." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018).

> "[S]uits alleging violations of the securities laws, particularly those brought pursuant to Sections 11 and 12(a)(2), are especially [amenable] to class action resolution." *Cosby*, 2020 WL 3548379, at *5 (citation omitted). Here, the focus centers on Defendants' common course of alleged misconduct, because the claims depend mostly on establishing that certain statements and omissions common to all the offerings were material misrepresentations. While Defendants argue that differences in investor knowledge create insurmountable individual issues, given the many common issues Securities Act claims raise, even if investors have different levels of knowledge concerning the undisclosed information, "it does not follow that these individual [knowledge] issues would be sufficient to overcome the predominance of the common issues." *Public Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 117 (S.D.N.Y. 2011).

> The level of investors' knowledge required at class certification is their "actual knowledge about the [undisclosed] condition." *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 586 (C.D. Cal. 2012). Given the difficulty of proving actual knowledge, courts have frequently held that this showing cannot be made absent evidence of "investors who are alleged

- 29 -

to have participated in the fraud in question." *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 312 F.R.D. 332, 349 (S.D.N.Y. 2015).

Secondly, the required scope of actual knowledge at class certification is "widespread knowledge among members of the investing community about [the undisclosed] scheme perpetuated by defendants." *In re SunEdison, Inc. Secs. Litig.*, 329 F.R.D. 124, 141 (S.D.N.Y. 2019). Where knowledge is not widespread among investors, individual questions of investor knowledge cannot "permeate the litigation." *Id.* at 142. If widespread actual knowledge is based on public information, then it creates common, class-wide issues and does not defeat predominance in any event. *See Gaynor v. Miller*, No. 3:15-CV-545-TAV-DCP, No. 3:15-CV-546-TAV-DCP, No. 3:16-CV-232-TAV-DCP, 2018 WL 3751606, at *15 (E.D. Tenn. Aug. 6, 2018); *Facebook*, 312 F.R.D. at 348.

The crux of Plaintiffs' claim is that the Offering Documents contained misstatements and/or omissions of material fact. This issue will predomina[te] over any secondary issues. Moreover, proof of Defendants' alleged misrepresentations and/or omissions are susceptible to generalized proof. *See Cosby*, 2020 WL 3548370, at *33-34. "[T]he fact that damages may have to be ascertained on an individual basis is not sufficient to defeat" predominance or class certification. *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015); *see also Gaynor*, 2018 WL 3751606, at *18 ("Because the statutory formula applies, the individual damages questions are sufficiently reduced that predominance of the common questions, answers, and fact remains."). The common questions of law and fact here predominate over any questions affecting only individual members. The predominance requirement is satisfied here. *See Gaynor*, 2018 WL 3751606, at *14.

Based upon our thorough review of the circumstances presented in this matter in light of applicable case law, we agree with the trial court's determination concerning predominance and Rule 23.02(3). We reiterate that a *prima facie* claim pursuant to section 11 requires allegations that an investor had purchased a security "issued pursuant to a registration statement" that contained a "material misstatement or omission." *See Herman & MacLean*, 459 U.S. at 382. The federal courts have established that "materiality is judged according to an objective standard" such that materiality questions are considered "common to all members of the class." *See In re Facebook Inc., IPO Secs. & Derivative Litig.*, 312 F.R.D. 332, 349 (S.D.N.Y. 2015); *see also Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 587 (C.D. Cal. 2012) ("[T]esting the materiality of the alleged misrepresentations does not turn on an individualized analysis.").

Defendants assert that the presence of certain information available in the public domain, either at the time of the initial public offering or in the ensuing weeks, was sufficient to demonstrate that some investors might have had knowledge of the misrepresentations in the offering documents, which is relevant because a claim under section 11 is barred when the purchaser "knew of [an] untruth or omission" at the time of acquisition. *See* 15 U.S.C. § 77k(a); *Katz*, 287 F.R.D. at 586. Defendants' postulate, therefore, is predicated not on allegations of actual knowledge, but rather on allegations that investors were put on "inquiry notice" of the probability of a material misrepresentation. *See, e.g.*, *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 214 (S.D.N.Y. 2012) ("[I]nquiry notice begins when the totality of the 'circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded.'") (quoting *Staehr v. The Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 411, 427 (2d Cir. 2008)); *see also Katz*, 287 F.R.D. at 586. However, Defendants have failed to show that such arguments of investor public "knowledge" cannot be handled on a class-wide basis.

As the New York federal district court explained in *Tsereteli*:

> [A]ny defense of inquiry notice that [the defendant] might wish to assert "can be achieved through generalized proof." [The defendant] cannot have it both ways. Either the news reports, ratings downgrades, trustee reports, and other indicators they rely on would have to be sufficient to put any reasonable investor on notice, or they would not. Thus, this defense almost inevitably will be susceptible to generalized proof and cannot defeat predominance.

283 F.R.D. at 214 (footnote omitted). *See also Gaynor v. Miller*, No. 3:15-CV-545-TAV-DCP, 2018 WL 3751606, at *15 (E.D. Tenn. Aug. 6, 2018) (citing *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 239 (S.D.N.Y. 2012) (explaining that even if news reports provided some knowledge to investors, such information was "subject to generalized proof")). Similarly, here, claims of information in the public domain would be subject to generalized proof common to the entire class. We accordingly agree with the trial court's conclusion that questions common to the class would predominate over individual issues, such that this action is maintainable as a class action pursuant to Rule 23.02(3).[6]

---

[6] We note that Defendants did not take issue with the trial court's determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See* Tenn. R. Civ. P. 23.02(3).

## VII. Class Definition

Finally, Defendants contend that the class definition adopted by the trial court is overbroad in that it contains no time limitations. The trial court adopted the following class definition: "all persons who purchased or acquired common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with SmileDirect's September 12, 2019 initial public offering." Defendants posit that in-and-out traders who sold their shares before September 24, 2019, or acquired them after November 12, 2019, should be excluded from the class due to Plaintiffs' allegations that any misrepresentations and omissions were revealed through disclosure events occurring between the two dates. As such, Defendants claim that investors who sold their shares before or purchased them after this time period would have incurred no damages.

In its order, the trial court noted that the Securities Act is a "strict liability statute" that "sets forth a common statutory damages formula which presumes that losses at the time a security is 'sold' result from the defendants' misstatements, irrespective of when that sale occurs," citing 15 U.S.C. § 77k(e); 15 U.S.C. § 77l(b); and *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005). The court further stated that the Securities Act "does not reference corrective disclosures or limit losses to sales that occur after them." Moreover, as Plaintiffs point out, a federal district court in Tennessee has explained that "there is no requirement in the Securities Act that a purchaser sell a security to allege a Section 11 claim." *Gaynor*, 2018 WL 3751606, at *19.

Defendants' arguments concerning the class definition herein are akin to arguments raised in *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 625 (N.D. Cal. 2018), wherein the defendants claimed that in-and-out traders who purchased and sold their shares prior to certain alleged corrective disclosures should be excluded from the class. In addressing this issue, the California federal district court agreed with prior federal decisions that had held that in-and-out traders should not be excluded at the class certification stage because they "may prove that some of the truth leaked out prior to the corrective disclosures and caused injury at an earlier date." *Id.* (citing *In re Daou Sys.*, 411 F.3d 1006, 1026 (9th Cir. 2005) ("[A] plaintiff may recover for interim manifestations of later-disclosed fraud that begin to 'leak out' prior to the corrective disclosure."); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017). The court further noted that because it retained the power to modify the class definition at a later stage in the proceedings, the defendants could renew their request at a later stage following the completion of discovery. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. at 625.

Similarly, here, Plaintiffs assert that Defendants are "prematurely and improperly rais[ing] merits issues at the class certification stage." We agree. Defendants question whether certain class members will be able to prove that they actually incurred damages if they sold their SDC shares before or purchased them after various corrective

disclosures were made. The answer to this question will depend on the proof developed in discovery regarding those class members' claims.

As our Supreme Court has explained, "it is properly the trial court's prerogative to make the initial determination of and any subsequent modifications to class certification. The trial court retains significant authority to redefine, modify, or clarify the class." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996). We determine that any questions concerning temporal limitations on the class are better addressed to the trial court following discovery.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's certification of the proposed class. Based on lack of standing, however, we dismiss Plaintiffs' claims under section 12 of the Securities Act of 1933, codified at 15 U.S.C. § 77l. We remand this matter to the trial court for further proceedings consistent with this opinion. Costs on appeal are assessed to the defendants, SmileDirectClub, Inc.; David Katzman; Kyle Wailes; Steven Katzman; Jordan Katzman; Alexander Fenkell; Susan Greenspon Rammelt; Richard Schnall; Camelot Venture Group; J.P. Morgan Securities LLC; Citigroup Global Markets Inc.; BofA Securities, Inc.; Jefferies LLC; UBS Securities LLC; Credit Suisse Securities (USA) LLC; Guggenheim Securities, LLC; Stifel, Nicolaus & Company, Incorporated; William Blair & Company, LLC; and Loop Capital Markets LLC.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE